Sullivan, }
Dec. 5, 1905. }

CLAREMONT RAILWAY & LIGHTING CO. v. PUTNEY & a.

A street railway and lighting company which is authorized by its charter to "acquire such real and personal property as may be necessary and convenient in the prosecution of its business" is not thereby empowered to take the same by right of eminent domain, in the absence of language expressly conferring the power, or pointing out the steps to be pursued, or making provision for compensation.

The statute which empowers street railways to take by eminent domain such land as may be necessary for the purposes of installing and maintaining power plants does not authorize the condemnation of land and water privileges for the purpose of diverting streams and procuring power with which to operate plants located on other land owned by such corporations.

PETITION, for a writ of *mandamus*, brought by the plaintiffs against Henry M. Putney, Arthur G. Whittemore, and George E. Bales, railroad commissioners, to require them to assess damages occasioned by an alleged taking by the plaintiffs of certain land, water-power, and appurtenances, belonging to the defendant Roberts. Trial at the November term, 1904, of the superior court before *Wallace*, C. J., who dismissed the petition and ordered judgment for the defendants, subject to the plaintiffs' exception.

Roberts owns a dam across Sugar river in Claremont, by which he operates a woolen mill. The dam flows back the water of the stream easterly for a distance of 300 feet or more. He also owns a tract of land situated on the south side of the river, the north line of which is the middle of the stream, extending easterly from the easterly limit of the back-flow of the dam about 203 feet. In the last 203 feet there is a natural fall in the river of about fifteen feet, which creates a water-power that has never been utilized. The plaintiffs own land on the north side of the river, extending the entire length of the unutilized water-power and a distance of about 100 feet further east. They also own a tract of land on the south side of the river, above the Roberts land and adjoining it at its easterly boundary. At the point where the plaintiffs own both sides of the river, they have erected a dam, from the northerly end of which they have constructed a canal along the north side of the stream to a power-house located on that side of the river at the lower or easterly end of the unutilized water-power. By means of the dam and canal the plaintiffs divert substantially all the water of the stream and do not return it to the channel of the river until it reaches the power-house, thereby depriving Roberts of the privilege of having the water flow by his land.

In August, 1902, the plaintiffs filed a petition with the secretary of state for the purpose of condemning the unutilized water privilege and land of Roberts adjoining the same, in accordance with the requirements of chapter 158, Public Statutes, and requested the board of railroad commissioners to assess the damages occasioned thereby. The commissioners, being in doubt as to their authority to assess damages for land and water-power taken for the purpose of producing electric power for the operation of an electric railway and an electric lighting plant, declined to proceed, and this petition was thereupon brought.

*Frank H. Brown* and *Mitchell & Foster*, for the plaintiffs.

*Hermon Holt* and *Streeter & Hollis*, for the defendants.

BINGHAM, J. The plaintiffs are authorized by their charter " to acquire by contract all the property, assets, and franchises " of the Claremont Street Railway Company and the Claremont Electric Light Company; to " construct, maintain, and operate a railroad," using any power except steam, for the " transportation of passengers, freight, express, and mail," over and upon such highways and lands within the limits of the town of Claremont " as may be necessary for the public accommodation " ; to carry on in the town the business of " generating, manufacturing, producing, and supplying electricity for purposes of light, heat, and mechanical power " ; to make use of the streets of the town in distributing the same; to " construct and maintain suitable buildings, dams, boilers, water and other motors, engines, electrical machinery and works as may be needed and convenient for conducting the business of said corporation " ; and to " lease, hold, purchase, and acquire such real and personal estate as may be necessary and convenient in the prosecution of its business." Laws 1901, *c.* 276.

The first contention of the plaintiffs is, that it is to be implied from the use of the word " acquire " in their charter that the legislature intended to confer upon them the power to take by eminent domain such property, real and personal, as might be necessary to the prosecution of their business. But the answer to this is, that as the exercise of this power is against common right, and the plaintiffs' charter does not expressly confer the power, or point out the steps to be pursued in its exercise, or make provision for compensation, the presumption is that the legislature did not intend to confer it. Private property cannot be invaded by this power without statutory authority ; and statutes which are claimed to authorize its exercise are to be strictly construed. 1 Lew. Em. Dom., *s.* 240.

The plaintiffs also contend that the right of eminent domain is conferred upon them by section 4, chapter 27, Laws 1895, as amended by chapter 93, Laws 1901; and that under the provisions of this statute they are authorized to condemn the land of the defendant Roberts and the water privilege thereto appertaining, so that by means of their dam and canal they may divert the water of the stream from its natural channel and conduct it to their power-house, to be there used in developing electrical power. Section 4, as amended, reads as follows: "All parts of street railways, not located in a public highway, shall be laid out, located, and the location changed, under the provisions of chapter 158 of the Public Statutes; said railway corporations may take and hold in the manner provided by said statute such land as may be necessary for the purposes of installing and maintaining power plants, car-houses and depots, repair shops, pole lines, wires, side tracks, and gravel pits; and said railway corporation and all persons whose property shall be taken for the use of such railway corporation shall have respectively all the rights and privileges, and be subject to all the duties, restrictions, and liabilities contained in said chapter." This section is a part of the general street railway law; and such power as is there conferred the plaintiffs, as a street railway corporation, are entitled to exercise. Laws 1895, c. 27, s. 1. The portion of the section upon which they base their claim to condemn the land and water privilege in question is: "Said railway corporations may take and hold . . . such land as may be necessary for the purposes of installing and maintaining power plants." But this provision does not authorize street railway corporations to condemn land and water privileges for the purpose of diverting streams and procuring power with which to operate power plants erected or to be erected on their own land. On the contrary, the authority there conferred is limited to taking such land as may be necessary for locating or placing power plants in position for use and maintaining the same. This construction gives to the words used their natural and usual meaning and such as is recognized by leading lexicographers. The plaintiffs' contentions cannot be sustained.

*Exception overruled.*

All concurred.