United States District Court for the District of New Hampshire
No. 79-115

## DAVID AND PETRA GAZZOLA

v.

## JOHN A. CLEMENTS, COMMISSIONER, DEPARTMENT OF PUBLIC WORKS AND HIGHWAYS

January 29, 1980

*Stephen R. Fine*, of Manchester, by brief and orally, for the plaintiffs.

*Thomas D. Rath*, attorney general (*Martin R. Jenkins*, attorney, by brief and orally), for the defendant.

DOUGLAS, J.   The United States District Court for the District of New Hampshire (*Devine*, C.J.) has certified six questions under our rule 34. The questions focus generally on a condemnee's right to a hearing if his land is being taken to make way for a State park.

In 1962 the Governor and Council authorized the appraisal and purchase of land required for the Pawtuckaway State Park project. One of the parcels involved was land belonging to Mr. Krickor Arzoumanian, a close friend of the plaintiffs. Mr. Arzoumanian was adamant in his desire to keep his home, and negotiations between him and the State continued over several years. In the meantime the State acquired the land surrounding the Arzoumanian property and the park project went forward.

In 1975 Mr. Arzoumanian died. The State attempted to buy the property from the decedent's estate but failed owing to lack of funds. On January 30, 1976, the estate sold the property to David and Petra Gazzola, the plaintiffs in this action. Since that time the plaintiffs have made their home on the property.

In 1978 the legislature, in special session, appropriated funds with which the department of resources and economic development (DRED) could acquire the property for the Pawtuckaway State Park. Laws 1978, ch. 49. Included within the appropriations bill were several explanatory and limiting sections, one of which read: "Any land acquired . . . shall be purchased by the commissioner of public works and highways, with the approval of governor and council." Laws 1978, 49:6. Pursuant to this directive, and in accordance with both RSA 219:2, which grants to DRED the authority to take property by eminent domain for park purposes, and RSA 228:6 V, which authorizes the department of public works and highways to assist other State agencies in acquiring land, the commissioner of public works and highways initiated procedures to acquire the plaintiffs' land.

The plaintiffs made it clear to DRED representatives that they would not sell at any price. Later, on October 17, 1978, the department of public works and highways informed the plaintiffs that an appraiser would be sent to determine the fair market value of their property. On October 20, after reviewing the circumstances of the proposed taking, the DRED commissioner determined that the condemnation should go forward.

Five days later the plaintiffs' counsel met with DRED representatives. Plaintiffs offered, in exchange for a promise to terminate the taking, to refrain from developing or using their land in any manner incompatible with park purposes, and to permit park users the enjoyment of their property. DRED rejected the offer. The plaintiffs then filed a complaint in federal district court that gave rise to the certified questions.

*Question No. 1.* "Does Chapter 49, Section 6, of the Laws of 1978 preclude the eminent domain power granted to the Department of Resources and Economic Development by RSA 219:2 from being exercised against plaintiffs' property?" The answer to this question hinges on whether RSA 219:2, which grants eminent domain power to DRED, is inconsistent with the subsequent appropriations directive, Laws 1978, 49:6. The plaintiffs point out that section 6 speaks in terms of "purchase" rather than "condemnation" or "eminent domain." They argue that use of the word "purchase" evinces a legislative intent to limit DRED's power to acquiring the plaintiffs' land by voluntary sale. We reject this argument.

■ Basically the plaintiffs ask this court to find an implied repeal of a former statute. We are reluctant to make such a finding, and we will do so only if the conflict between the two enactments is irreconcilable. *Bd. of Selectmen of the Town of Merrimack v. Planning Bd.*, 118 N.H. 150, 383 A.2d 1122 (1978). To be successful, evidence of convincing force must be presented by the party urging that there is an implied repeal. *Id.; Opinion of the Justices*, 107 N.H. 325, 221 A.2d 255 (1966).

■ In this case the plaintiffs do not sustain their burden of proving clearly and convincingly that the term "purchase" was intended to exclude condemnation proceedings. The plaintiffs rely on *Claremont Railway & Lighting Co. v. Putney*, 73 N.H. 431, 62 A. 727 (1905) and *Opinion of the Justices*, 107 N.H. 325, 221 A.2d 255 (1966). Their reliance is misplaced. In *Claremont* we held that a railroad charter that authorized the company to "purchase . . . and acquire such real and personal property as may be necessary and convenient in the prosecution of its business" did not confer on the company the eminent domain power. We refused to read the terms "acquire" or "purchase" as delegating the ultimate taking power to a corporation in which it did not previously reside. In so doing we merely recognized the principle that because the eminent domain power is against the common law right to enjoy property, express statutory language is required for its delegation to a public utility or State agency. *Opinion of the Justices* is essentially in point with *Claremont*. We do not understand either case to require that the eminent domain power, once expressly delegated to a State agency, can be withdrawn by subsequent statutory use of terms that could not have been used to delegate it initially. We answer the first question in the negative.

■ *Question No. 2.* "Is the eminent domain power granted to the Department of Resources and Economic Development pursuant to RSA 219:2 in derogation of Article 12, Part 1, of the New Hampshire Constitution?" We answer in the negative with regard to that portion of Article 12, Part 1 that requires that "no part of a man's property shall be taken from him . . . without his own consent, or that of the representative body of the people." RSA 219:2 standing alone is a valid exercise of the legislative authority to delegate the eminent domain power to State agencies. *State v. 4.7 Acres of Land*, 95 N.H. 291, 62 A.2d 732 (1948); *cf. Petition of Mt. Washington Road Co.*, 35 N.H. 134 (1857). Furthermore, Laws 1978, 49:6 does not render RSA 219:2 unconstitutional as it applies to plaintiffs. The Gazzolas argue that when the general court enacted the appropriations measure it withdrew the legislative consent that must be a part of any

condemnation. N.H CONST. pt. 1, art. 12. We reject this argument for reasons outlined in our answer to the first question.

■ There is a problem, however, with regard to that part of N.H. Const. pt. 1, art. 12 relating to equal protection which provides that "Every member of the community has a right to be protected by it, in the enjoyment of his life, liberty and property." The first inquiry concerning equal protection is whether persons similarly situated are being treated differently under the statutory law. In the present case, persons whose land is about to be taken *by the State* are "similarly situated." Under current statutes, one member of this similarly situated class may be treated differently from another with respect to the right to a hearing on the question whether a taking should occur, depending on the purpose for which the State desires the land.

When the State wants private land for a class I or II highway, the landowner has the benefit of RSA ch. 233. That statute provides that the Governor and Council "may determine *upon hearing* whether there is occasion for the laying out" of the highway. RSA 233:1 (emphasis added). Alternatively the Governor may appoint a commission to preside over the hearing. RSA 233:2. Regardless of who conducts the hearing, however, the question whether the highway should be built over certain identifiable land must be settled before a condemnation proceeding can go forward. The statute also requires impartial commissioners and notice of a hearing to affected landowners. RSA 233:5. At the hearing the Governor and Council, or the commission, must "hear all parties interested." RSA 233:10. If the land is desired for a class I or II highway, then, the landowner has a right to notice and a hearing before the Governor and Council or an impartial appointed commission on the question whether an occasion for the taking exists. The right to a hearing on the question whether an occasion for the taking of property exists is also available to those whose land is sought for certain other State government projects. *See* RSA 10:4 (taking for State institutions by same procedure "as in cases of land taken for highways"); RSA 235:1 (commission appointed by Governor and Council to determine if there is "occasion" to lay out a highway to public water).

■■ RSA 219:2 gives no express right to be heard on any issue except compensation. To withhold from the plaintiffs certain procedural safeguards which would otherwise be available, merely because their land is sought for park purposes rather than highway purposes, is to deny them equal protection of our State laws. N.H. Const. pt. I, arts. 1, 10, 12 and 14; *State v. Amyot,* 119 N.H. 671, 407 A.2d 812 (1979); *H.P. Welch v. State,* 89 N.H. 428, 199 A. 886

(1938), *aff'd*, 306 U.S. 79 (1939). The State must grant privileges, as well as impose restrictions, with an even hand. *State v. Amyot supra*; *Rosenblum v. Griffin*, 89 N.H. 314, 197 A. 701 (1938). "Equality of benefit is no less required than equality of burden." *Id.* at 321, 197 A. at 706.

The next equal protection issue concerns the nature of the interest with regard to which there has been discrimination. In this case we are concerned with a family's home. We have held that ownership, use and enjoyment of private property in general is a "fundamental personal right" under the New Hampshire Constitution. *Metzger v. Town of Brentwood*, 117 N.H. 497, 502, 374 A.2d 954, 958 (1977). Certainly the right to one's family home is no less important. *See Lynch v. Household Finance Corp.*, 405 U.S. 538, 552 (1972) (the Court stated that the right to own and enjoy a home, among other things, is a "personal" right, and that the law has long recognized that rights in property are "basic civil rights"). When a fundamental interest is involved, "State statutes are subjected to strict judicial scrutiny with the result that there must be a compelling state interest to sustain the legislation." *Belkner v. Preston*, 115 N.H. 15, 18, 332 A.2d 168, 170–71 (1975).

In this case, we see no compelling State interest in denying a hearing; indeed the classification identified in this case is not logically and reasonably related to a valid State interest. We cannot see how any State interest could be served by giving a citizen a hearing if the taking is for a State highway and denying him a hearing if the taking is for a State park. Such dissimilar treatment of members of a class who are distinguishable only with reference to the way the State government intends to use their property is the essence of arbitrariness. To deny a hearing in this case violates the equal protection guarantees of our State constitution. This basic constitutional consideration requires that the plaintiffs be put on a par with others who are similarly situated. *Opinion of the Justices*, 115 N.H. 222, 223, 337 A.2d 354, 356 (1975); *Opinion of the Justices*, 118 N.H. 347, 349, 387 A.2d 333, 335 (1978); *Belkner v. Preston*, 115 N.H. 15, 17, 332 A.2d 168, 170 (1975). Absent an express statutory hearing provision, we will read into RSA ch. 219 a hearing requirement similar to that in RSA ch. 233. We take this step because we believe that the legislature would prefer this course to outright invalidation. *See State v. Smagula*, 117 N.H. 663, 666, 377 A.2d 608, 610–11 (1977). Only with this modification to the statute are we able to answer question No. 2 in the negative.

■ *Question No. 3.* "Does the eminent domain power granted to the Department of Resources and Economic Development by RSA 219:2 require for its operation, the prior consent for purchase by Governor and Council, pursuant to RSA 219:1?" We answer this question in the affirmative because it is required both by Laws of 1978, chapter 49:6 and by the equal protection clause of our constitution.

■ *Question No. 4.* "Must the approval of Governor and Council be obtained pursuant to Chapter 49, Section 6, of the Laws of 1978 prior to the taking of plaintiffs' property, and, if so, at which point of the proceedings?" The answer is "yes," for the reasons stated in our answer to question No. 2. The hearing on the question whether the taking should go forward must be held before the filing of a declaration of taking under the Eminent Domain Procedure Act, RSA 498-A:5. The legislature's reason for enacting RSA ch. 498-A was "to provide a complete and exclusive procedure to govern all condemnations of property for public purposes. . . ." It has nothing whatever to do with *whether* a piece of land *should* be taken. That is a threshold question and it must be settled at a Governor and Council hearing before the provisions of RSA ch. 498-A may be given effect.

*Question No. 5.* "If the answer to Question 1 above is affirmative, does Chapter 49, Section 6, of the Laws of 1978 authorize the use of eminent domain power in acquiring plaintiffs' property and, if so, at which point during the proceedings is the approval of Governor and Council required?" Because we answer question No. 1 in the negative, we do not answer this question.

■ *Question No. 6.* "Under RSA Chapter 498-A, does a condemnee have the right to contest the necessity issue and, if so, at which point of the proceedings does the right arise?" We answer this last question in the negative. RSA ch. 498-A itself "is not intended to enlarge or diminish the power of condemnation given by law to any condemnor . . . or . . . the rights given by law to any condemnee to challenge the necessity for any condemnation." RSA 498-A:1 (Supp. 1977); *see City of Nashua v. Gaukstern,* 117 N.H. 30, 369 A.2d 211 (1977). The basis for the condemnee's right to a hearing is explained in the answer to Question No. 2.

*Remanded.*

BOIS and KING, JJ., did not sit; LAMPRON, C.J., retired, sat by special assignment pursuant to RSA 490:3; the others concurred.