786 F.2d 1526
 54 USLW 2611
 Alice WARD and Mary Smith, Plaintiffs-Appellants,
v.
DOWNTOWN DEVELOPMENT AUTHORITY, William Farkas, Executive
Director Downtown Development Authority, Carlos
Gonzalez, and Harold Rodgers,
Defendants-Appellees.
 No. 85-5133.
 United States Court of Appeals,
Eleventh Circuit.
 April 21, 1986.
 
 Sharon Bourassa-Diaz, Peter H. Barber, Legal Aid Service of Broward, County, Inc., Ft. Lauderdale, Fla., for plaintiffs-appellants.
 Raymond O. Holton, Jr., Ft. Lauderdale, Fla., for Development Authority.
 Ariel Raab, Ft. Lauderdale, Fla., Paige Stover, Clearwater, Fla., for Gonzalez & Rogers.
 Appeal from the United States District Court for the Southern District of Florida.
 Before HATCHETT and CLARK, Circuit Judges, and ALLGOOD*, Senior District Judge.
 CLARK, Circuit Judge:
 
 I. INTRODUCTION
 
 1
 Appellants Alice Ward and Mary Smith appeal from the district court's dismissal of their equal protection, Fifth Amendment taking, procedural due process, and pendent state law claims against the Downtown Development Authority ("DDA") and its agents, Carlos Gonzalez and Harold Rodgers, for failure to state any claim for which relief could be granted.
 
 II. FACTUAL BACKGROUND
 
 2
 Appellants are former tenants of the Shady Grove Apartments ("Apartments") in Fort Lauderdale, Florida. The DDA is a governmental entity created by the Florida legislature to eliminate slums and blight in the downtown area of Fort Lauderdale. In April, 1984, the DDA purchased the Apartments to further development of a performing arts center and retained the former owners, Gonzalez and Rodgers, as managing agents. Appellants claim that the acquisition was not preceded or accompanied by a public hearing or any assurance that residents displaced by the development would have access to adequate alternative accommodations.
 
 
 3
 The contract for sale and purchase entered into by the DDA and the former owners required that Gonzalez and Rodgers obtain from each tenant a statement to the effect that his or her only interest in the property was the right to possess his or her apartment pursuant to any existing lease or oral agreement and that such interest would expire on or before October 30, 1985. The appellants, who had no lease and were month-to-month tenants at will, signed the requested statements. On October 11, 1984, Gonzalez and Rodgers, on behalf of the DDA, notified appellants to vacate their apartments by October 31, 1984. Appellants vacated their apartments pursuant to this notice without receiving any relocation assistance from the DDA.
 
 
 4
 On October 31, 1984, appellants filed a complaint requesting equitable relief and damages to redress violations of their rights under the Fifth and Fourteenth Amendments to the Constitution, 42 U.S.C. Sec. 1983 and Chapter 65-1541 of the Laws of Florida, Special Laws of 1965, as amended by Chapter 69-1056 ("DDA Act"). Specifically, they alleged that appellees had taken their possessory interests in the Apartments without just compensation, denied them the relocation assistance provided in the DDA Act without due process of law, and violated the DDA Act. Appellants eventually amended their complaint and, on January 2, 1985, the district court dismissed the amended complaint for failure to establish the elements of any claim for which the court could grant relief.
 
 
 5
 In dismissing appellants' amended complaint, the district court ruled that the expectancy of a tenant at will in the continuation of that tenancy is so uncertain and speculative that it cannot be considered a compensable property interest under the Fifth and Fourteenth Amendments. In response to appellants' claim that the failure to provide relocation assistance violated due process and equal protection of law, the court stated that Sec. 1983 provides a right of action only for a violation of those rights secured by the United States Constitution and not for a denial of state-created rights. Finally, having concluded that appellants' federal claims were not meritorious, the district court declined to exercise pendent jurisdiction over appellants' state law claims. This appeal followed.
 
 III. ISSUES
 
 6
 The issues raised on appeal are (1) whether continued occupancy as tenant at will is a property interest protected by the Fifth and Fourteenth Amendments from uncompensated taking by the DDA; (2) whether appellants claim that they were deprived of property without due process of law when they were displaced by the DDA without the statutorily required assurance of adequate alternative accommodations states a claim under 42 U.S.C. Sec. 1983; (3) whether appellants claim that they were denied equal protection of the law when they were displaced without the assurance of adequate alternative accommodations accorded by the DDA to others similarly situated states a claim under Sec. 1983; and (4) whether the district court properly dismissed appellants' state law claims.
 
 
 7
 We hold that the district court erred in dismissing appellants' amended complaint and remand for further proceedings.
 
 IV. RATIONALE FOR OUR DECISION
 
 8
 We note at the outset that we should reverse the dismissal of appellants' complaint unless it appears beyond doubt that appellants can prove no set of facts in support of their claims that would entitle them to relief. Hishon v. King & Spaulding, 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984). We accept the allegations of appellants as true. Id.
 
 A. Fifth Amendment Taking Claim
 
 9
 The Fifth Amendment to the United States Constitution, which applies to states and localities by operation of the Fourteenth Amendment, provides that private property shall not be taken for public use without just compensation. Appellants claim that their possessory interests in the Apartments were taken without just compensation. Specifically, they argue that they enjoyed a protectable property interest in their tenancy at will, which interest was contractually extended through October 30, 1985, by the acknowledgment they signed at the request of the DDA and its agents and that this property was taken without just compensation when they were required to vacate the Apartments on October 31, 1984.
 
 
 10
 We reject appellants' contention that simple principles of contract law dictate that the agreement they signed at the behest of the DDA[1] created a property interest in remaining in possession of their apartments until October 30, 1985. This agreement is simply an acknowledgment that limits the right of possession to the terms of any oral lease agreement and the potential length of occupation to a specified period. It does not create in the tenant any interest not already established by the oral agreement.
 
 
 11
 Contrary to the district court's holding, however, a month-to-month tenancy at will is a compensable property interest under Florida law. The court in Pensacola Scrap Processors, Inc. v. State Road Department, 188 So.2d 38 (Fla. 1st Dist.Ct.App.1966), cert. denied, 192 So.2d 494 (Fla.1966), recognized that any tenancy, no matter the duration, is a property interest that can be the subject of a compensable taking. The court explained that the fact that the tenancy was of potentially short duration did not change the nature of the interest. Rather, the length of the lease is relevant only to determine the amount of compensation that must be paid. See also United States v. Petty Motor Co., 327 U.S. 372, 380-81, 66 S.Ct. 596, 601, 90 L.Ed. 729 (1946).
 
 
 12
 Nonetheless, appellees argue that, as appellants were given more than the 15-day notice of termination required to terminate a month-to-month tenancy pursuant to Fla.Stat.Ann. Sec. 83.03 (West Supp.1985), any compensable interest they had in their apartments ceased to exist as of the end of the notice period. See id. Were the landlord in this case a private person or entity, legally sufficient notice to vacate would indeed terminate the tenant's interest as of the end of the notice period.
 
 
 13
 However, the landlord here is a state entity whose power to acquire property and displace tenants is circumscribed by any conditions set forth in the legislative grant of its authority. Section 21 of the DDA Act requires that the DDA take certain steps prior to approving a "renewal project." It must (1) determine by resolution that the area affected is a slum or blighted area; (2) submit the renewal plan to the city planning board for review and recommendations as to the conformity of the renewal project with the general plan for development of the city; (3) hold a public hearing on the renewal project; and (4) find that "a feasible method exists for the location of families who will be displaced from the renewal area in decent, safe and sanitary dwelling accommodations within their means and without undue hardship to such families."[2] Thus, if the Apartments were acquired as part of a renewal project, the DDA could not terminate appellants' tenancy at will simply by giving the required notice but had also to meet the requirements of Sec. 21. The DDA completed the first two of the above requirements but neglected to hold a public hearing or make any provision for feasible relocation of persons displaced by the acquisition and demolition of the Apartments. Appellants' property interest in their tenancy at will therefore continued so long as these conditions were not met, and if the district court finds that their interest was prematurely cut off, they will be entitled to just compensation therefor.[3]
 
 
 14
 This case is similar in all relevant respects to Jeffries v. Georgia Residential Finance Authority, 678 F.2d 919 (11th Cir.1982), cert. denied, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982). In that case, tenants evicted from federally subsidized housing without any determination that "good cause" for the evictions existed argued that they had thereby been deprived of property without due process. The landlord argued, inter alia, that the tenants had no property interest in continued occupancy because the lease and Georgia law permitted termination without cause upon thirty-days written notice, which had been provided. The court found that the federal statutory scheme granted the Public Housing Authority ("PHA") the authority to terminate a tenancy only upon a finding of just cause. It held that the tenants retained a protected property interest in their leases despite having received legally sufficient notice to terminate because the PHA had the authority to evict only for cause. Id. at 927. Appellants in this case similarly retained a protected property interest in continued occupancy despite legally sufficient notice to terminate because the DDA had the authority to pursue a renewal project only upon compliance with Sec. 21.[4]
 
 
 15
 Appellees' contention that the DDA was not required to hold a hearing and provide for adequate alternative accommodations because the Apartments are located outside its "area of operation"[5] is completely without basis in the DDA Act or in logic. The requirements of Sec. 21 apply to "renewal projects." Appellees argue that the Apartments were not acquired as part of a renewal project because Sec. 22(1) grants the power to carry out renewal projects within the DDA's area of operation. Appellees ask us to read Sec. 22(1) as a limiting provision when its express purpose is to enumerate certain powers "in addition to others herein granted." In so doing, they ask us to find that the Florida legislature intended to require public participation and a finding of feasible relocation of displacees only when the activities of the DDA remain confined to its area of operation. We decline to read the DDA Act as appellees suggest and point out that this interpretation may violate the equal protection clause by conditioning eligibility for a benefit on a seemingly irrational factor--the location of the development. Cf. Gazzola v. Clements, 120 N.H. 25, 411 A.2d 147, 151 (1980) (distinguishing right to condemnation hearing on basis of purpose of taking violates equal protection clause).
 
 
 16
 Nothing in the DDA Act suggests that projects undertaken outside the area of operation are exempt from the requirements of Sec. 21. Most significantly, the legislature defined "renewal project" and "renewal area" in Sec. 1(16) and (17) without any limiting reference to the DDA's area of operation. The most reasonable overall interpretation of the DDA Act is that it focuses the mission of the DDA by specifying an area of operation while recognizing, realistically, that the DDA may have to undertake activities outside its area of operation to prevent the spread of slum and blight or to enhance activities within the area of operation. The DDA Act thus gives the DDA the power to act within or without the area of operation to effectuate its purpose, which is to eliminate slum and blight through renewal projects. It does not distinguish the procedures required to approve a project undertaken within the area of operation from those required to approve a project located outside such area.
 
 
 17
 We hold that the district court erred when it dismissed appellants' Fifth Amendment taking claim. Under the facts of this case, a tenancy at will is a protected property interest. Taking appellants' allegations as true, their tenancy at will was "taken" when the DDA terminated it without having completed the requirements set forth in the statute giving it the power to acquire and dispose of property.
 
 B. Procedural Due Process Claim
 
 18
 The district court dismissed appellants' 42 U.S.C. Sec. 1983 claim for deprivation of property without due process on the ground that Sec. 1983 provides a right of action only for a violation of those rights secured by the United States Constitution and not for a denial of state-created rights. The district court was apparently concerned because the property interest of which appellants claim to have been deprived was created by state law. However, that the source of a property interest is state law does not render the deprivation of the property without due process any less a basis for Sec. 1983 liability.
 
 
 19
 While it is true that the deprivation of a right secured by the Constitution and laws of the United States is a prequisite to a Sec. 1983 action, Martinez v. California, 444 U.S. 277, 285, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980), the Supreme Court has explained that property interests protected by the right to due process are not created by the Constitution but are created and defined by independent sources of law, such as state law. Board of Regents v. Roth, 408 U.S. 564, 578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); see also Webb's Fabulous Pharmacies v. Beckwith, 449 U.S. 155, 162, 101 S.Ct. 446, 451, 66 L.Ed.2d 358 (1980). Thus, a Sec. 1983 claim of a procedural due process violation cannot be dismissed solely because the interest at stake is state-created. The court must further inquire whether state law invests the plaintiff with "a legitimate claim of entitlement" protected by the due process clause. Roth, 408 U.S. at 578, 92 S.Ct. at 2709.
 
 
 20
 We have already held that appellants had a property interest in continued occupancy of their apartments until the DDA complied with the DDA Act. If there existed no decent, safe and sanitary alternative accommodations within appellants' means that were available to them without undue hardship, appellants may also have been entitled to material relocation assistance. The Supreme Court has recognized that a statute directing a state agency to confer a benefit under certain circumstances may create sufficient interest in the benefit that some amount of due process protection must be afforded to ensure that the benefit is distributed as required, even if the person applying for the benefit does not yet hold it and may turn out not to be entitled to it. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 13-14, 99 S.Ct. 2100, 2106-07, 60 L.Ed.2d 668 (1979) (statute requiring order of release on parole unless one of specified reasons for deferral present creates liberty interest protected by due process guarantees). That the existence and extent of any entitlement to relocation benefits could not be determined until after a factual assessment of the feasibility of adequate relocation does not render appellants' interest too speculative or unilateral to merit protection.
 
 
 21
 We acknowledge that the analysis whether a statute requires the kind of fact-finding that is sufficiently mandatory to create a protectible entitlement must be conducted on a case-by-case basis. Id. at 13, 99 S.Ct. at 2106. In this case, we must identify the elements of the relocation assessment that do not rest within the discretion of the DDA and that were enacted for the benefit of persons such as appellants, for it is those elements that define appellants' entitlement.
 
 
 22
 The DDA Act does not direct the DDA to conduct its inquiry into the existence and nature of alternative accommodations in any particular way, other than by requiring it to hold a public hearing on the renewal project. Nor does it direct that the DDA ensure adequate alternative accommodations through any particular means. The DDA is left with the discretion to conduct fact-finding and to provide necessary relocation assistance in the manner it deems best. However, the DDA has no discretion to decide not to conduct a public hearing or make the finding of adequate alternative accommodations. Once the DDA determines that adequate alternative accommodations are not available, it must find or create such housing before it may proceed with the renewal project. It must assist displacees in relocating to avoid causing them undue hardship. Once the inquiry to assess the need for relocation assistance has been completed, the DDA is left with no discretion to decide whether to provide assistance. It is left only with the discretion to decide how to provide assistance or to forego undertaking the renewal project. Persons displaced by a renewal project are thus entitled to feasible relocation, but they are entitled only to that kind and amount of assistance found by the DDA to be necessary to ensure their relocation in "decent, safe and sanitary dwelling accommodations within their means and without undue hardship."
 
 
 23
 The function of due process is to minimize the risk of erroneous fact-finding. "[T]he quantum and quality of process depend upon the need to serve [this purpose]." Greenholtz, 442 U.S. at 14, 99 S.Ct. at 2106. Where, as here, the details and contours of the protected entitlement are left to the discretion of the fact-finding body, procedures designed to elicit specific facts are not necessarily appropriate. Id. at 15, 99 S.Ct. at 2107. The error to be avoided by imposing procedural safeguards is the DDA's failure to take account of the need for adequate alternative accommodations in its decision whether to approve a renewal project. We believe that the safeguards set forth in the DDA Act ensure all the process that is necessary in the form of a public hearing accompanied by notice and a determination reached thereafter that adequate relocation of those displaced by it is feasible. In requiring only that the DDA comply with those requirements deemed appropriate by the Florida legislature, we afford protection to the displaces by ensuring a forum through which they may express concern and proffer evidence about the feasibility of adequate relocation while remaining mindful of the danger of discouraging states from creating new entitlements by encumbering their allocation with procedures that may be unnecessarily burdensome. See Greenholtz, 442 U.S. at 14, 99 S.Ct. at 2106-07.
 
 
 24
 We hold that the district court erred when it dismissed appellants' procedural due process claim because the property interest asserted by appellants was created by state law. On remand, the district court should consider whether the facts support the claim that appellants were deprived of continued occupancy of the Apartments or of relocation assistance without due process of law. If appellants were able to relocate in decent, safe and sanitary accommodations within their means and without undue hardship, they will be entitled to no monetary relief as they suffered no loss from the appellees' failure to provide due process.
 
 C. Equal Protection Claim
 
 25
 Appellants claim that others similarly situated have received the benefit of the relocation provision of the DDA Act. They charge that the DDA's failure to comply with its directive in this case has deprived them of equal protection of the laws. The district court did not address this equal protection claim separately but denied that appellants stated any Sec. 1983 claim because Sec. 1983 provides a cause of action only against a violation of rights secured by the Constitution.
 
 
 26
 The district court implies that the Constitution does not protect individuals against the arbitrary application of state laws. It is fundamental that the Constitution secures equal protection of the laws. That a complaint alleges arbitrary application of state law does not render the cause any less constitutional. Neither does the fact that appellants have alleged no discrimination on the basis of a suspect classification or fundamental right remove this case from the reach of Sec. 1983. The nature of the alleged classification goes only to the level of scrutiny with which the court reviews the alleged equal protection violation. We hold that appellants have properly stated a cause of action for violation of equal protection of the laws under Sec. 1983 and reverse the district court's dismissal of this claim.
 
 D. Pendent State Law Claims
 
 27
 Because the district court's decision to refuse to exercise pendent jurisdiction was based on the premise that it had no jurisdiction over any federal claims, we reverse the district court's decision to dismiss appellants' pendent state law claims so that the district court may reconsider the question of pendent jurisdiction.
 
 V. CONCLUSION
 
 28
 We hold that the Florida legislature has created in those persons who are to be displaced by the DDA's renewal projects a protectible interest in continued occupancy that cannot be taken without just compensation or due process of law and a protectible interest in relocation assistance that may not be withheld unless the DDA has conducted the hearing and made the findings required by Sec. 21 of the DDA Act. We further hold that appellants' amended complaint states a cognizable equal protection claim. As the district court retains jurisdiction over appellants' federal claims, it should reconsider dismissal of their pendent state claims. We therefore reverse the district court's decision to dismiss the amended complaint and remand for any further proceedings that may be necessary to resolve this case.
 
 
 29
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 Pursuant to the contract for purchase and sale of the Apartments, an agent of Gonzalez and Rodgers obtained from appellants executed acknowledgments that provided:
 I (We) hereby acknowledge that I (We) have no interest in the property legally described as:
 
 
 [527]
 W. Las Olas Blvd, Ft. Lauderdale Fla
 other than the right to possess Apartment # _____ under the terms and conditions of my lease (copy of which is attached) or under the terms of an oral agreement if no written lease exists, and such right of possession will expire prior to Oct. 30 1985 and I (We) agree to vacate the premises on or before Oct. 30 1985 without notice from the Buyer or others.
 Record at 343-44.
 
 
 [2]
 "Decent, safe and sanitary dwelling accommodations within their means and without undue hardship" are referred to throughout this opinion as "adequate alternative accommodations." "A feasible method ... for the location of families" in adequate alternative accommodations is referred to as "feasible relocation."
 
 
 [3]
 Strictly speaking, the requirements of Sec. 21 limit the DDA's authority to approve a renewal project. The fact that the DDA would not have the authority to begin the renewal project until it followed the procedures of Sec. 21 leads us to the conclusion that it lacked the authority to evict tenants in furtherance of the renewal project in the absence of compliance with Sec. 21. We do not address the effect of failure to comply with Sec. 21 on the validity of other actions taken by the DDA, such as condemnation. We hold only that residents of a renewal area are entitled to remain free from displacement by a DDA renewal project unless and until the DDA has followed the requirements of the DDA Act, including the adequate relocation requirement, or to be compensated for their interests
 
 
 [4]
 Arguably, the property interest found in Jeffries was based upon the fact that the particular condition on the authority to terminate was a finding of good cause rather than upon the fact that PHA's authority to terminate was conditional. While it is "well settled that a protected property interest arises where a government benefit may be withdrawn only for cause," id. at 925, the overarching issue is whether the tenant has a "legitimate claim of entitlement," rather than a mere "unilateral expectation," in the claimed property interest. Id. (quoting Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). A finding of good cause is only one example of a mandatory condition that may limit the authority of the state, giving the beneficiary an entitlement. In this case, the requirement that the DDA make a finding of the feasibility of relocation invested appellants with an entitlement to continued occupancy until the renewal project requiring their displacement had been approved pursuant to the conditions set forth in the DDA Act
 
 
 [5]
 There is no dispute that the Apartments are located outside the DDA's area of operation
 We do not understand appellees to suggest that the acquisition was ultra vires. Section 8 of the DDA Act gives the DDA the authority to acquire property outside its area of operation.