**UNITED STATES of America, Plaintiff,**

v.

**LEASEHOLD INTEREST IN the PROPERTY KNOWN AS 900 EAST 40TH STREET, APARTMENT 102, CHICAGO, ILLINOIS, Defendant.**

**No. 90 C 3616.**

United States District Court,
N.D. Illinois, E.D.

June 27, 1990.

Ira H. Raphaelson, U.S. Atty. by Elizabeth M. Landes, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court has been provided with the United States' newly-filed Verified Complaint for Forfeiture of a leasehold interest in Chicago Housing Authority ("CHA") property, coupled with the United States' ex parte motions:

1. for a finding of probable cause before service of the warrant of seizure and monition and

2. for leave to file the case under seal until execution of the warrant and seizure of the property.

For the reasons briefly stated in this memorandum opinion and order, both motions are granted.

It appears from this morning's newspaper[1] that the present action is part of a planned effort to convert this District Court into the federal equivalent of the Housing Court in the state court system—despite the obvious availability of conventional remedies of eviction against tenants who are engaged in illegal activities, as the occupant of the premises identified in the case caption is alleged to be. Without pausing to dwell at any length on the scarceness of all the resources involved and the priorities of allocation of those resources,[2] this Court has turned to the fount of jurisdiction invoked by the government: the forfeiture provisions of 21 U.S.C. § 881(a)(7),[3] which extend to any real property (including leasehold interests) used to commit or facilitate the commission of drug offenses.

One obvious threshold issue in that respect is whether a tenant's typical short-term occupancy right in a public housing project, such as those owned and operated by CHA, rises to the level of "property" within the meaning of the forfeiture stat-

---

1. See *Chicago Tribune*, June 27, 1990, § 2, at 13, col. 3.

2. Nonetheless it is at least worth noting that all the conventional uses of the forfeiture concept and statutes—which rest on the historic concept that property employed in the tainted activity becomes contraband, itself viewed as a transgressor and hence subject to in rem forfeiture (see, e.g., *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 684, 94 S.Ct. 2080, 2092, 40 L.Ed.2d 452 (1974) and most recently *Caplin & Drysdale, Chartered v. United States*, — U.S. ——, 109 S.Ct. 2646, 2653, 105 L.Ed.2d 528 (1989))—create a direct benefit to the sovereign equal to the penalty imposed on the individual lawbreaker by the loss of the property. When someone's lands (commercial real estate, residence or what have you) or goods (most frequently in drug cases a vehicle—an automobile, a boat or even an airplane) are forfeited, the United States acquires often valuable property while at the same time punishing the wrongdoer. Millions of dollars are generated by the seizure and forfeiture of such properties or of money forfeited under like circumstances. But what can be said for the extinction of a low-in-

come public housing lease in terms of *tangible* benefit to the United States? And any thought that such activity is worthwhile because it provides a meaningful deterrent to the drug trade betrays an abysmal ignorance of the economics of that illicit business—in which the perceived dollar incentives, even at the lowest levels of distribution, are so much greater than the perceived risks that there are literally people standing in line to replace anyone taken out of business by arrest or conviction. So the net effect of this line of activity will be punitive as to the few individuals involved but purely cosmetic in governmental terms—nice headline-grabbers that mask the failure of the vaunted "war on drugs" to deal with our massive drug problems in any meaningful way. Because such policy judgments (even if wrongheaded) are for the executive branch and not the judiciary, however, they do not affect the substantive issues dealt with in this opinion.

3. Further citations to provisions in Title 21 will simply take the form "Section—."

542

ute. That of course implicates the further question whether such "property" is to be determined as a matter of state law or federal law. Though the answers to the relevant questions are not crystal-clear, a preliminary look has confirmed that it would be inappropriate to give—at the very outset of the case—a definitive "no" answer that would justify the Complaint's sua sponte dismissal for lack of subject matter jurisdiction (see *Ward v. Downtown Development Authority*, 786 F.2d 1526 (11th Cir.1986), holding that the right to occupancy under a month-to-month tenancy at will is a compensable property interest under Florida law and is hence protected by the Fifth and Fourteenth Amendments from uncompensated taking).

Accordingly the United States' Complaint survives as a threshold matter. Its Verified Complaint and accompanying affidavit certainly establish probable cause to believe that the leasehold interest was used to facilitate a felony drug offense (see, e.g., among the many cases repeating the definition of "probable cause" as a "reasonable ground for belief of guilt; supported by less than prima facie proof but more than mere suspicion," this Court's opinion in *United States v. One 1985 BMW 318i*, 696 F.Supp. 336, 339 (N.D.Ill.1988)). Its right to file the case under seal for the purposes identified in its ex parte motion follows as a matter of course. This ruling does not however imply any determination as to the ultimate viability of the forfeiture claim (cf. *United States v. Robinson*, 721 F.Supp. 1541, 1545–46 (D.R.I.1989), holding that a comparable leasehold is not forfeitable under Section 853 *even after a criminal conviction* because of the specific exclusion under Section 853a(d)(1) of public housing benefits from the federal benefits that are denied to drug traffickers under Section 853(a)).