8

Hillsborough
No. 82-559
No. 82-560

CLINTON MERRILL & a.

v.

CITY OF MANCHESTER & a.

JOHN H. GADD & a.

v.

CITY OF MANCHESTER & a.

October 3, 1983

10

*Eaton, Solms, Mills & McIninch,* of Manchester (*Richard E. Mills* on the brief and orally), for the plaintiffs in No. 82-559.

*John H. Gadd,* of Manchester, by brief and orally, for the plaintiffs in No. 82-560, pro se.

*Thomas R. Clark,* assistant city solicitor, by brief and orally, for the defendant City of Manchester.

*Craig, Wenners & McDowell,* of Manchester (*William H. Craig* and *Vincent A. Wenners, Jr.,* on the brief, and *Mr. Craig* orally), for the defendant Manchester Housing Authority.

DOUGLAS, J. The plaintiffs in these two consolidated cases appeal from an order of the Superior Court (*Goode,* J.) approving the recommendations of a Master (*Mayland H. Morse, Jr.,* Esq.) to dismiss their petitions to enjoin the taking of their land for the development of an industrial park in Manchester. For the reasons which follow, we vacate the superior court's decree dismissing the plaintiffs' petitions and remand the cases for findings and rulings consistent with this opinion.

The plaintiffs in case No. 82-559, Clinton Merrill and members of his family, own twenty-three acres of undeveloped land on South Willow Street in Manchester, which they have maintained as a wooded parcel for current use taxation purposes pursuant to RSA chapter 79-A. The plaintiffs in case No. 82-560, John H. Gadd and Nancy J. Gadd, own and reside on approximately three acres of primarily agricultural land in Manchester on the opposite side of South Willow Street from the Merrills' property. Both parcels have been zoned for industrial use under the Manchester Zoning Ordinance since 1965, and are part of a 109-acre tract which the defendant Manchester Housing Authority (MHA) seeks to develop as an industrial park.

In the late 1970's, the MHA, in conjunction with the defendant City of Manchester, considered numerous sites throughout the city for potential industrial development. After three prospective sites were studied by a private consulting firm, the Manchester Board of Mayor and Aldermen voted in 1980 to endorse the MHA's recommendation to acquire the 109-acre tract, including the land at issue in these cases, to be known as the Grenier Industrial Park Extension, for industrial development. Thereafter, the MHA hired the Manchester firm of Costello, Lomasney & de Napoli, Inc., to study whether structural conditions, blighting influences, or land development limitations existed so as to permit the MHA to take the 109 acres, including the Merrill and Gadd properties, by eminent domain pursuant to RSA chapter 205 for the Grenier Industrial Park Project (project).

In April 1981, Costello, Lomasney & de Napoli, Inc., submitted a report to the MHA which concluded that the properties within the project site would qualify as "blighted" property within the meaning of RSA chapter 205. *See* RSA 205:2; *see also* RSA 205:2-b. Specifically, as to the Merrill property, the report cited the existence of severe slopes and severe soil conditions. Regarding the Gadd property, the report noted, as blighting influences, the existence of a house and garage, a livestock shed rated as being in "poor" condition, and the agricultural/residential use of the land. The location of a stream on the Gadd property was listed as a land development limitation. Additionally, the absence of utility services, sewerage, and sufficient roadways were cited as general limitations on proper development of the 109 acres for industrial purposes.

Based on this study by Costello, Lomasney & de Napoli, Inc., as well as on work done by its own staff, the MHA determined that the conditions existing on the property within the project area constituted "blight" which was detrimental to public health, safety, and welfare, as defined in RSA chapter 205. Pursuant to RSA 205:4, the

board of mayor and aldermen voted in June 1981 to adopt the MHA's finding of "blight" and to approve the redevelopment plan submitted by the MHA for the development of an industrial park on the 109 acres.

All of the property owners in the project area except the Merrills and the Gadds subsequently sold their land to the MHA. In September 1981, the plaintiffs petitioned the superior court to enjoin the defendants from taking their property by eminent domain for redevelopment as part of the industrial development project. The plaintiffs challenged the MHA's finding that their land was "blighted." The case was referred to a master.

After four days of hearings and several views of the project area, including the Merrill and Gadd properties, the master issued a report in November 1982 in which he recommended that the plaintiffs' petitions for an injunction be dismissed. The master ruled that the plaintiffs were not entitled to participate in a public hearing prior to the condemnation of their land under the statutory scheme created by RSA chapter 205. He held that the finding of blight as the basis for the necessity of the taking was a legislative question which had been delegated to the MHA, and that the finding could be judicially reviewed only for fraud, bad faith, or abuse of discretion. Finding none of these circumstances inhering in the MHA's determination that the project area was blighted, the master affirmed the MHA's decision. The plaintiffs then brought this appeal.

The plaintiffs claim that RSA chapter 205 violates their equal protection rights because other types of municipal takings must comply with more complete procedural safeguards. However, the defendants raise certain preliminary issues which we must address before considering these cases on their merits.

█ First, the defendants contend that the plaintiffs waived any objection that the statute denies them equal protection of the laws by failing to provide for a hearing on the issue of blight, because the plaintiffs did not present the issue to the master. We find this assertion to be without merit. Because the plaintiffs believed they would receive a de novo hearing before the master on the question of blight, and because the scope of the evidentiary hearing suggested that the judicial review would be de novo, they had no reason to raise their equal protection claim in the trial court. In his report, the master revealed for the first time that he would apply an appellate, rather than a de novo, standard of review to the question of blight. The plaintiffs therefore had no notice or opportunity to assert their equal protection claim in response to an adverse ruling by the master at the start of the proceedings.

Second, the defendants argue that the plaintiffs have no equal protection claim because their opportunity to contest the finding of blight should have been by way of a proceeding before the former eminent domain commission, now the board of tax and land appeals, pursuant to RSA 498-A:9-a (Supp. 1982). That statute was enacted after our decision in *Gazzola v. Clements*, 120 N.H. 25, 411 A.2d 147 (1980). In *Gazzola*, we held that the failure to provide a hearing before the taking of land for a State *park*, where such a hearing was statutorily required before the taking of land for a State *highway*, violated equal protection under the New Hampshire Constitution. *Id.* at 29–30, 411 A.2d at 151–52. RSA 498-A:9-a, I (Supp. 1982) provides that a condemnee may raise a preliminary objection to the declaration of taking and that such an objection "shall be the exclusive method of challenging . . . [t]he declaration of taking." The defendants contend that RSA 498-A:9-a, I (Supp. 1982) now provides the exclusive method for the plaintiffs to challenge the *necessity* for the taking of their property, and that *Gazzola* therefore is inapposite.

We cannot so easily dismiss the plaintiffs' claim that they were entitled to a hearing on the issue of blight *before* such a finding was made. Although the legislature may have enacted RSA 498-A:9-a (Supp. 1982) in response to our decision in *Gazzola*—a point not entirely without dispute—the equal protection right to a hearing *before* a taking that we established in that case cannot be vitiated merely because the legislature has created an alternative means of contesting a finding of blight *after* such a determination is made.

The defendants also argue that the fact that the plaintiffs did not receive a hearing before the MHA or the board of mayor and aldermen on whether their property was blighted presents no equal protection problem vis-a-vis hearings before municipal governing bodies on the necessity for laying out a highway under RSA chapter 231. Because the condemnor under RSA chapter 205 is a local housing authority, whereas under RSA chapter 231 the condemnor is a municipality, the defendants assert that condemnees in those proceedings are not similarly situated, a preliminary requirement in any equal protection analysis. *See Carson v. Maurer*, 120 N.H. 925, 931, 424 A.2d 825, 830 (1980) (citations omitted); *Gazzola v. Clements*, 120 N.H. at 29, 411 A.2d at 151.

We find the defendants' argument to be an unduly strained interpretation of the two statutory schemes. Under RSA 205:4, a municipal governing body, such as the Manchester Board of Mayor and Aldermen, plays a significant role in any redevelopment project. No project may proceed until that body approves a redevelopment plan, which must satisfy certain enumerated statutory criteria.

Consequently, we believe that the statutory framework squarely presents the question "whether persons similarly situated are being treated differently" under the law. *Id.*, 411 A.2d at 151.

■ We turn now to the merits of the plaintiffs' argument. We hold that the lack of a provision in RSA chapter 205 for a hearing before the finding of blight is made, and the absence of other procedural requirements, contravene the equal protection guarantees of our State Constitution. *See* N.H. CONST. pt. I, art. 12.

Under RSA chapter 205, a local housing authority may take property for redevelopment purposes without first providing the condemnees with an opportunity for a hearing to contest the assertion that their land is blighted. In contrast, RSA chapter 231 requires that, prior to the taking of property for highway purposes, a city or town must provide a hearing for all condemnees; this statute also establishes a right of appeal for any condemnee who might be aggrieved by the decision of the city or town in laying out a highway. *See* RSA 231:11, :34; *see also* RSA 43:1 to :4, and 44:2 (procedures for hearings of board of selectmen or board of mayor and aldermen regarding laying out of lands for highway or public use).

■ We recently held that the scope of a judicial hearing on any appeal from a municipal taking of property for a highway under RSA chapter 231 is de novo. *V.S.H. Realty, Inc. v. City of Manchester*, 123 N.H. 505, 508, 464 A.2d 1111, 1112 (1983). In *V.S.H.*, the board of mayor and aldermen in Manchester held a hearing to consider a petition to widen Granite Street. After the hearing, the board granted the petition, and the landowners appealed to the superior court, contesting the necessity for the taking. This court held that the "scope of review" in the superior court "entitled" the landowners "to a trial de novo before the superior court on the issues of occasion and necessity."

The master properly found no *statutory* basis in chapter 205 for a hearing before either the city or him on the question of necessity. The statutory scheme before us thus sets up two distinct procedural classifications of landowners: those whose property is to be taken by a housing authority for *redevelopment* purposes, and those whose property is to be taken by a city or town for highway use.

■ The scheme clearly affects private property ownership rights, which we have previously recognized as fundamental rights under the New Hampshire Constitution. *See Gazzola v. Clements*, 120 N.H. at 30, 411 A.2d at 151–52; *Metzger v. Town of Brentwood*, 117 N.H. 497, 502, 374 A.2d 954, 958 (1977). It is well settled that

diverging statutory procedural classifications involving fundamental rights are subject to strict scrutiny and cannot survive unless they promote a compelling State interest. *Gazzola v. Clements*, 120 N.H. at 30, 411 A.2d at 152.

In *Gazzola v. Clements*, *id.*, 411 A.2d at 152, we could not find a compelling State interest to justify a statutory classification which provided a pre-taking hearing when the proposed taking was for a State highway but denied a hearing when the proposed taking was for a State park. Similarly, in the instant case, we see no compelling governmental interest in providing fewer procedural safeguards to landowners merely because their property is sought for municipal redevelopment use by a housing authority to eliminate blight, rather than for municipal highway use by a city. For this reason, we must hold that the failure of RSA chapter 205 to provide procedural safeguards akin to those that exist under RSA chapter 231 violates the equal protection clause of our State Constitution.

In order to avoid outright invalidation of RSA chapter 205, we may read into its provisions procedural safeguards which afford the same substantive protection as those contained in RSA chapter 231. *See Gazzola v. Clements*, 120 N.H. at 30, 411 A.2d at 152. We believe that the municipal governing body performs a meaningful function under RSA 205:4 in reviewing a proposed redevelopment plan to ensure that the redevelopment project is consistent with governmental growth planning objectives and serves a public purpose.

Accordingly, we hold that condemnees in an RSA chapter 205 proceeding shall have a right to a hearing before the local governing body which must approve a redevelopment plan pursuant to RSA 205:4. The hearing shall be equivalent to the hearing authorized by RSA chapter 231. *See* RSA 231:11, :12 (hearing conducted by municipal governing body authorized to lay out highway). At such hearing, the governing body should determine whether the local housing authority has satisfied the statutory provisions regarding blight, necessity, and public purpose. *See* RSA 205:1 to :2-b. The condemnee shall have the right to present evidence at the hearing before the governing body. Additionally, on appeal any party aggrieved by the governing body's findings with respect to blight, necessity, and public purpose is entitled to a de novo trial before the superior court. *See V.S.H. Realty supra.*

Another issue presented by these cases is the *burden* of proof applicable to the proceeding in superior court. In *State v. Garceau*, 118 N.H. 321, 323, 387 A.2d 330, 331 (1978), we held that "the constitu-

tional requirement of just compensation . . . impos[es] on the condemnor the burden of proving by a preponderance of the evidence . . . that the price it offers for condemned land does in fact justly compensate the condemnee." Because the legislature had placed upon the condemnor, in a proceeding before the then eminent domain commission, the burden of proving by "the balance of probabilities" any contested issue of fact, *see* RSA 498-A:19 (Supp. 1982), we held that the burden of proof should remain on the condemnor on appeal to the superior court. 118 N.H. at 323–24, 387 A.2d at 331–32.

The blight question here at issue could also have been raised in a proceeding before the then eminent domain commission. *See* RSA 498-A:9-a (Supp. 1981 and 1982). We believe, therefore, that the burden of proof governing a proceeding under RSA chapter 498-A is equally applicable to a de novo appeal proceeding in superior court before the condemnation has occurred.

In the instant case, we hold that the plaintiffs' equal protection rights were violated when they were denied a hearing before the determination was made that their land was blighted. We cannot accept the defendants' contention that the right to a hearing was satisfied when the plaintiffs were given the opportunity to appear before the MHA two months *after* the board of mayor and aldermen had already approved the redevelopment plan. Under the circumstances of these cases, however, it is not necessary that proceedings begin anew before the board of mayor and aldermen.

Our review of the transcript in these cases reveals that the plaintiffs received a full evidentiary hearing in superior court. The master, however, did not hear the appeal de novo in determining the issue of blight, occasion, necessity, etc. *See V.S.H. Realty supra.* The plaintiffs would not be prejudiced, in our opinion, if these cases were remanded to the trial court for findings of fact and rulings of law consistent with this opinion based on the existing record. Of course, the master, in the exercise of his discretion, may hold additional evidentiary hearings should he deem them necessary.

Because of the manner of our disposition of these cases, we will not address at this juncture the plaintiffs' further arguments that (1) the taking of their land is not for a public purpose or (2) the denial of a hearing violated due process.

*Remanded.*

SOUTER, J., did not sit; the others concurred.