Cheshire
No. 84-019

TOWN OF CHESTERFIELD

v.

BERNARD BROOKS *& a.*

February 13, 1985

*Lane and Lane,* of Keene (*Howard B. Lane* on the brief and orally), for the plaintiff.

*Phillip J. Stiles,* of Concord, New Hampshire Civil Liberties Union, by brief and orally, for the defendants.

*Barton L. Mayer,* of Concord, by brief for New Hampshire Municipal Association, as amicus curiae.

DOUGLAS, J.    At issue in this case is whether a provision of the plaintiff town's mobile home zoning ordinance violates State statutory or constitutional provisions.

On June 26, 1979, the defendants, Bernard and Marjorie Brooks, purchased a tract of land on the northerly side of New Hampshire Route 9, a paved highway in Chesterfield, New Hampshire.

Since March 1961, Chesterfield has been divided into two residential districts, R-1 and R-2, and several commercial areas. R-1 consists of all land to a depth of 500 feet on each side of the center line of all public roads and highways within Chesterfield which were paved as of March 8, 1977. Thus, defendants' land is in district R-1. R-2 consists of all other land within Chesterfield, except for certain commercial areas not applicable to this case. There are currently 36 miles of unpaved roads in Chesterfield and 51 miles of paved roads.

Section 4.13 of the Chesterfield Zoning and Building Ordinances provides in part: "A single trailer or mobile home shall be located only in Residential District No. 2 . . . ." Conventional homes located on paved roads must be set back 75 feet, except those located on Route 9 and Route 13, where there is a 100-foot set back requirement. All homes on unpaved roads must be at least 75 feet from the road. Additionally, all single-family homes, including mobile homes

not located in mobile home parks, must be on separate lots with a minimum area of two acres and a frontage of not less than 200 feet.

In July 1979, the defendants obtained a building permit for the construction of a home on their lot. This house was not built, however, and in March 1982, the defendants were denied a special exception to place a mobile home on their property.

In June 1982, without permission from the town, the defendants placed a mobile home on their lot, setting it back 300 feet from the highway, the maximum distance permitted by their lot. The defendants do not contest the fact that their dwelling is a "mobile home" as defined in the town's zoning ordinances.

The town petitioned the superior court to order the defendants to remove their mobile home. After a hearing, the Master (*Robert A. Carignan*, Esq.) issued his report on December 12, 1983, in which he found that the zoning and building ordinances of the town of Chesterfield, as applied to mobile homes, did not violate either RSA 31:119 (Supp. 1983) (now RSA 674:32 (Supp. 1983)) or the New Hampshire Constitution. He recommended that the defendants be ordered to remove their mobile home from their lot within thirty days, and that the town be awarded its costs and reasonable attorney's fees. The defendants were further ordered to pay the penalty for violations provided in the zoning ordinances from August 1, 1983, until their mobile home is removed. The Court (*Contas*, J.) approved the report of the master, and the defendants appealed. Subsequently, the defendants received a bill for $2,176.80 from the town, consisting of $1,340.00 in penalties and $836.80 in attorney's fees.

The defendants contend that Chesterfield's zoning ordinance, as applied to the location of mobile homes, violates RSA 674:32 (Supp. 1983) in that it effectively excludes mobile homes from Chesterfield. We disagree.

In order to encourage a broad range of affordable housing alternatives, Laws 1981, 406:2, the New Hampshire Legislature passed RSA 674:32 (Supp. 1983). This statute bars municipalities from totally excluding manufactured housing. The defendants' mobile home is considered manufactured housing under this statute. Manufactured housing is described as a sectional or factory-built dwelling which is at least eight feet by forty feet in size. Thus, a smaller travel trailer or camper may still be legally banned as housing anywhere in a town, while larger units commonly known as "mobile homes" may not. RSA 674:31 (Supp. 1983).

Under the statute, however, towns were given wide discretion regarding the regulation of manufactured housing. RSA 674:32 (Supp. 1983) provides in part:

"A municipality shall not exclude manufactured housing *completely* from the municipality . . . . A municipality which adopts land use control measures shall allow, *in its sole discretion,* manufactured housing to be located on individual lots *in some, but not necessarily all,* residential areas within the municipality, or in mobile home parks and subdivisions created for the placement of mobile homes on individually owned lots, or in all 3 types of locations."

(Emphasis added.)

■ There are two residential zones in Chesterfield, R-1 and R-2, with R-2 comprising the larger land area. Mobile homes are allowed in the R-2 district, both on individual lots and in mobile home parks. This zoning scheme, therefore, complies with the statutory alternative which permits towns, in their sole discretion, to allow mobile homes in some, though not necessarily all, zones within a town.

We agree with the defendants, however, that Section 4.13 of Chesterfield's zoning ordinance violates their equal protection rights as guaranteed by the New Hampshire Constitution. N.H. CONST. pt. I, arts. 1, 2, 10, 12 and 14.

We have held in the past that "ownership, use and enjoyment of property is a 'fundamental personal right'". *Gazzola v. Clements,* 120 N.H. 25, 30, 411 A.2d 147, 151–52 (1980) (quoting *Metzger v. Town of Brentwood,* 117 N.H. 497, 502, 374 A.2d 954, 958 (1977)).

In two cases we have treated real property rights as fundamental for equal protection analysis under the New Hampshire Constitution. In those cases we held that government action infringing upon a person's real property rights is subject to strict scrutiny, so that the government must show a compelling State interest in order for its actions to be valid. *Merrill v. City of Manchester,* 124 N.H. 8, 14–15, 466 A.2d 923, 928 (1983); *Gazzola v. Clements, supra* at 30, 411 A.2d at 152.

Both *Gazzola* and *Merrill* were condemnation cases where the condemnees challenged hearing procedures which afforded them less opportunity to be heard than was afforded others similarly situated. In *Gazzola,* landowners whose property was being taken by eminent domain for park purposes were denied a hearing before the taking, while those whose land was being taken for highway use were entitled to a prior hearing. Similarly, in *Merrill,* the municipality provided fewer procedural safeguards to landowners whose property was sought for municipal redevelopment use by a housing authority than to those whose property was sought for municipal

highway use. In both cases, this court could not find a compelling State interest to justify the differing treatment of real property owners.

Both *Gazzola* and *Merrill* involved condemnation of land for direct government use. Our Constitution specifically provides property owners with a great degree of protection when their property is taken for public use: "But no part of a man's property shall be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people." N.H. CONST. pt. I, art. 12. Among the rights deemed fundamental for equal protection purposes are at least those which are independently protected by the Federal and State Constitutions.

■■ The right to be protected in the use and enjoyment of one's property is contained in both the Federal and State Constitutions. U.S. CONST. art. 5, amend. XIV; N.H. CONST. pt. I, arts. 2, 12. This has never been held to mean, however, that the government must show a compelling State interest before it can make any law regulating the use of property. The zoning of property for the health, safety and general welfare of the community is a valid exercise of the police power which States may delegate to municipalities. RSA 672:1 (Supp. 1983); *Sundeen v. Rogers*, 83 N.H. 253, 256, 141 A. 142, 143–44 (1928); *Loundsbury v. City of Keene*, 122 N.H. 1006, 1009, 453 A.2d 1278, 1280 (1982).

■■ This power to zone is not rendered *per se* unconstitutional because it may infringe upon a landowner's use and enjoyment of his or her property. "Zoning regulations and similar enactments, by their very nature, restrict the use of property and adversely affect individual rights. In most cases zoning regulations and proceedings thereunder will not amount to unconstitutional abuses of power." *Dugas v. Town of Conway*, 125 N.H. 175, 182, 480 A.2d 71, 75 (1984). In fact, zoning ordinances are presumed valid. *Stoney-Brook Development Corp. v. Town of Fremont*, 124 N.H. 583, 588, 474 A.2d 561, 563 (1984).

Zoning ordinances regulate property for the public good and balance the use and enjoyment of property of some residents against the use and enjoyment of other residents. Zoning ordinances consider and balance the interests of *all* landowners, and for this reason are subject to our middle tier equal protection test and not the strict scrutiny standard. It would be equally inappropriate to apply the rational basis test to zoning ordinances because the judicial deference accorded government action under that test would not provide adequate protection to the interests of property owners.

■ In order to be constitutional under our middle tier test the zoning ordinances of Chesterfield "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." *Carson v. Maurer*, 120 N.H. 925, 932, 424 A.2d 825, 831 (1980) (quoting *State v. Scoville*, 113 N.H. 161, 163, 304 A.2d 366, 369 (1973) (quoting *F. S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920))); *Allgeyer v. Lincoln*, 125 N.H. 503, 509, 484 A.2d 1079, 1083 (1984). The ordinance in the present case does not meet this test.

The ordinance itself expresses no reason for the difference in regulation. The purpose sought by the town, as described in its brief, in establishing a zoning scheme whereby all mobile homes must be located on an unpaved road, or at least 500 feet back from a paved road, is to protect the "Currier and Ives" character of the community.

The enabling statute authorizing towns to promulgate zoning ordinances lists preserving the character of a community among the valid goals of zoning regulations. RSA 674:17, II (1983) states:

> "Every zoning ordinance shall be made with reasonable considerations to, among other things, the character of the area involved and its peculiar suitability for particular uses as well as with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the municipality."

It has also been held that aesthetic values, such as preserving rural charm, are a proper consideration, at least among others, for New Hampshire towns when passing zoning regulations. *Steel Hill Development, Inc. v. Town of Sanbornton*, 469 F.2d 956, 961 (1st Cir. 1972); *Deering v. Tibbetts*, 105 N.H. 481, 484, 202 A.2d 232, 234–35 (1964).

Assuming that preserving rural charm by itself is a valid goal, Chesterfield's sweeping discriminatory regulation of mobile homes regardless of size or appearance does not bear a fair and substantial relationship to that goal.

■ Chesterfield's ordinance is not unreasonable simply because mobile homes are regulated. Zoning limitations on such housing may not be *per se* unreasonable. "A town may properly seek to regulate and restrict the location of mobile homes." *Village House, Inc. v. Loudon*, 114 N.H. 76, 79, 314 A.2d 635, 637 (1974); *Londonderry v. Faucher*, 112 N.H. 454, 456, 299 A.2d 581, 583 (1972). However, the town's regulation of mobile homes in this case does not bear a substantial relationship to its purported goal and puts an unreasonable burden on such owners.

If the stated goal of the town in discriminating against mobile homes is to protect the character of the community, it is not reasonable to require mobile homes to be 500 feet back from all paved roads or to be located on unpaved roads in order to achieve this goal. There are 51 miles of paved roads in Chesterfield. Surely not all of these areas are so charming as to require the town to put greater burdens on certain types of home owners in order to retain that charm. The nexus between "charm" and a paved road is not a logical one. In fact, in many areas of our State, the "charm" is better preserved by dirt roads which tend to discourage excessive building.

Additionally, requiring mobile homes to be 500 feet away from the road is not substantially related to guaranteeing scenic beauty. Even if a particular mobile home is unsightly, a 500-foot set back does not mean that it is hidden from sight. Nor does this restriction on mobile homes mean that site or stick-built homes located close to the road will be eye-appealing.

Not only is section 4.13 of the ordinance not substantially related to preserving rural charm, but it unfairly burdens mobile home owners. Although the town claims that such owners are not being unduly burdened because it provides the same services to those who live on paved as to those on unpaved roads, it misses the point. Living on a paved road is a service and convenience in itself. Locating on a paved road is generally a desirable feature in home ownership because of the greater accessibility and ease of travel it provides. Unpaved roads are usually not located near shopping, theaters and other amenities. Driving on dirt roads is often slower and more difficult because dirt roads are often not as well repaired and maintained as paved roads.

If owners of mobile homes do place their homes on any paved road in Chesterfield, they are subject to greater burdens than are similarly located conventional home owners. Locating a home 500 feet back from the road creates extra expenses. For example, a driveway of such a length is more costly to construct than a shorter driveway, and maintenance costs are greater, particularly given the snowfalls of New Hampshire winters. Added expenses will be incurred for running more wire for the electrical hook-up, as well as perhaps for landscaping a larger front yard. These are to be contrasted with the lessened expenses for conventional home builders who are required to set their houses back only seventy-five feet.

These added expenses may be particularly onerous for owners of manufactured housing who may have chosen such living because it is generally less expensive than building or buying a conventional home. Recognition of the wide opportunities for home ownership which manufactured housing provides was a compelling factor in

motivating the legislature to pass RSA 674:32 (Supp. 1983). The declaration of purpose of that statute stated:

> "In reaffirming the state's commitment to provide adequate housing opportunities, the general court recognizes that the costs of conventional, single family housing have risen sharply and that, if housing needs are to be met, the widest possible range of housing alternatives must be made available within each community. The general court further recognizes that it is important to provide young couples as well as elderly, retired citizens with affordable, reasonably priced, quality homes."

Laws 1981, 406:2.

The town of Chesterfield may achieve its goal of retaining its rural, residential character in less restrictive, more effective ways. Perhaps it could exclude manufactured homes from only those sections of paved, or unpaved, roads which truly do affect the town's character. An even more effective way of ensuring this goal would be through the establishment of historic districts. RSA 674:45 (Supp. 1983).

Chesterfield and other New Hampshire towns must take cognizance of the fact that manufactured housing, including what have commonly been referred to as mobile homes, has made great strides in recent years in its quality, and often compares very favorably to site-built housing. *Robinson Township v. Knoll*, 410 Mich. 293, 313, 302 N.W.2d 146, 149 (1981). Our legislature was aware of this fact when it passed RSA 674:32 and stated that it had found that "the partial or total exclusion of manufactured housing in communities is based upon outmoded perceptions as to the safety and quality of manufactured housing, and aesthetic factors." Laws 1981, 406:2.

We hold that the town of Chesterfield's zoning ordinance relating to the location of mobile homes, as presently worded, does not bear a fair and substantial relation to its goal of retaining the rural character of the town. As such it violates the defendants' rights to equal protection under the New Hampshire Constitution. Accordingly, the decision below requiring the defendants to remove their mobile home and to pay attorney's costs and penalties is reversed.

*Reversed.*

BATCHELDER, J., did not sit; SOUTER, J., concurred in the result; the others concurred.