Strafford
No. 87-342

JENSEN'S, INC.

v.

CITY OF DOVER

August 5, 1988

*Ouellette, Hallisey, Dibble & Tanguay P.A.*, of Dover (*William L. Tanguay* on the brief and orally), for the plaintiff.

*Fisher, Willoughby, Clancy, Woodman & Durand*, of Dover (*Scott E. Woodman* on the brief and orally), for the defendant.

BATCHELDER, J. In this zoning case, the plaintiff, Jensen's, Inc., appeals an order of the Superior Court (*Nadeau*, J.) affirming a decision of the Dover Zoning Board of Adjustment (the board) denying plaintiff's application for a special exception. We affirm.

The plaintiff proposed to develop an 86-unit mobile home park on a 38.72-acre parcel on Garrison Road in Dover. In order to obtain approval for its project, the plaintiff had to comply with the various provisions of the city's zoning ordinance relating to mobile home parks. Chapter 126 of the ordinance requires mobile home parks to be located in so-called R-40 (rural residential) zones, in areas where city sewer and water facilities are available, and only upon special exception granted by the board. In order to obtain the required special exception, the plaintiff had to satisfy § 170-20 of the zoning ordinance, which requires:

"A. The proposed park must conform to the Mobile Home Ordinance [chapter 126].

B. All plans for the proposed mobile home park must have been granted preliminary approval from the Dover Planning Board.

C. A determination by the Zoning Board of Adjustment that the proposed mobile home park will not adversely affect overall land values in the neighborhood.

D. A determination by the Zoning Board of Adjustment that the proposed mobile home park will not result in the creation of hazardous traffic conditions."

With respect to special exceptions, the ordinance also requires, under § 170-18, that the board consider not only the criteria in § 170-20, but also the specific requirements of Article XII. Within that article are the requirements of § 170-52, C.(3), which command the board to find that certain general conditions are fulfilled before a special exception is granted. The provisions of § 170-52, C.(3), which apply to all special exception requests, include requirements that:

"(a) The requested use is essential or desirable to the public convenience or welfare.

(b) The requested use will not create undue traffic congestion, or *unduly impair pedestrian safety*.

(c) The requested use will not overload any public water, drainage or sewerage system or any other municipal system to such an extent that the requested use or any developed use in the immediate area of the city will be unduly subjected to hazards affecting health, safety or the general welfare."

(Emphasis added.)

The plaintiff's application for a special exception was denied at a hearing of the board on December 18, 1986. At that hearing, the plaintiff presented professional market and traffic studies, as well as some lay testimony, with respect to overall land values and traffic impact in an attempt to satisfy subsections C. and D. of § 170-20. The board agreed that subsections A. and B. were satisfied. The plaintiff presented no evidence at that hearing with respect to the impact of its proposal on pedestrian safety under § 170-52, C.(3)(b).

On the other hand, there was considerable opposition to the project by means of public testimony. Comment was taken on the issues of surrounding land values, traffic conditions, and pedestrian safety. The board also accepted a letter of opinion from a local real

estate agent suggesting that the value of one of the abutting properties would be adversely affected by the project, considering also that the property was located near a hospital. The letter stated that the proposed mobile home park and the hospital would together adversely affect the value of the abutting parcel.

The board denied the special exception, after expressing its concern for overall land values, hazardous traffic conditions, and pedestrian safety. The plaintiff was notified of the board's decision by letter. The letter stated that "[t]he Board based [its] decision of denial on the fact that your request did not meet one or several of the requirements necessary to grant a special exception." The plaintiff subsequently filed a motion for a rehearing in which it presented additional evidence and raised the issues of the legality of the Dover mobile home provisions in light of RSA 674:32 and of their constitutionality under the equal protection clause of the New Hampshire Constitution. The board denied rehearing, and the plaintiff took a timely appeal to the superior court pursuant to RSA 677:4. After a hearing, the trial court, in a written order, upheld the board's decision on the basis that there was sufficient evidence on the issues of adverse effect on overall land values and traffic impact to support the board's denial. In addition, the trial court upheld the legality and constitutionality of the ordinance provisions. This appeal followed.

The plaintiff presents three issues for our review. First, the plaintiff argues that the trial court erred in failing to find that the board acted unjustly or unreasonably in concluding that the proposal would adversely affect overall land values and that it would create hazardous traffic conditions. Second, the plaintiff argues that the zoning ordinance, in placing unique and more demanding restrictions on mobile home parks, violates the provisions of RSA 674:32, concerning the exclusion of manufactured housing. Lastly, the plaintiff argues that the mobile home park restrictions violate equal protection guarantees under part I, articles 2 and 12 of the New Hampshire Constitution.

## I. *Reasonableness of the Board's Decision*

The plaintiff argues that the board's decision was unjust and unreasonable because it was based on insufficient evidence and the mere personal opinions of the board members. The plaintiff asserts that the lay public testimony on land values and traffic conditions was insufficient to controvert the conclusions of its professional studies. The defendant argues, on the other hand, that the evidence was sufficient and, coupled with the personal knowledge of the

board members, justified the denial. Moreover, the defendant argues, the plaintiff presented no evidence on the issue of pedestrian safety, and therefore failed to meet its burden to satisfy the criteria for a special exception.

 In an application to obtain a special exception from a zoning board, the burden of proof is on the applicant to present sufficient evidence to support a favorable finding on each of the requirements for a special exception. *Barrington East Owners' Association v. Town of Barrington*, 121 N.H. 627, 630, 433 A.2d 1266, 1268 (1981). Although the board did not make specific findings, which it had no obligation to do since none were requested, *Pappas v. City of Manchester Zoning Bd.*, 117 N.H. 622, 625, 376 A.2d 885, 887 (1977), the record reveals that the plaintiff presented no evidence on the issue of pedestrian safety, as required by § 170-52, C.(3)(b) of the zoning ordinance. Indeed, at the trial court hearing, an engineer for the company that prepared the traffic study testified for the plaintiff that the study drew no conclusions with respect to the impact that the development would have on pedestrian safety. The minutes of the board hearing show, however, that members of the public commented on the adverse effect that additional traffic would have on pedestrian safety in the area, especially since an elementary school is in the immediate area and since safety is already a volatile issue. The plaintiff has failed to meet its burden of proof, and the contrary evidence supports the board's decision. *See Barrington East Owners' Association v. Town of Barrington, supra* at 631, 433 A.2d at 1268. Although the trial court did not address this specific point, if any of the board's reasons for denial support its decision, then the plaintiff's appeal must fail. *See Burke v. Town of Jaffrey*, 122 N.H. 510, 513, 446 A.2d 1169, 1171 (1982).

 The plaintiff argues on this issue, however, that the board's letter of denial can fairly be read only to mean that the board was basing its decision on the factors contained in § 170-20, and no others. Thus, the plaintiff argues, the pedestrian safety factor, which is found in § 170-52, was not among the reasons for the board's denial. The plaintiff's reading of the denial letter is too narrow. Although the first paragraph of the letter refers to the plaintiff's application for a special exception under § 170-20, the concluding paragraph states that one or several of the requirements for a special exception have not been met. In our view, this language refers to all of the necessary requirements for a special exception, including those found in § 170-52. Accordingly, we hold

that the board was not unreasonable in finding that the proposal would unduly impair pedestrian safety, nor in denying plaintiff's request for a special exception.

II. *Legality of Dover Mobile Home Provisions Under RSA 674:32*

In 1986, the New Hampshire Legislature amended RSA 674:32, which was originally adopted in 1981 and recodified in 1983, with respect to the treatment of manufactured housing under local zoning ordinances. The section was amended again in 1987, to become effective July 1, 1988, but the pertinent version was the 1986 version in effect at the time this case arose. It provides:

> "Municipalities shall afford reasonable opportunities for the siting of manufactured housing and shall not exclude manufactured housing completely from the municipality by regulation, zoning ordinance or by any other police power. A municipality which adopts land use control measures shall allow, in its sole discretion, manufactured housing to be located on individual lots in most, but not necessarily all, residential areas within the municipality, or in manufactured housing parks and subdivisions created for the placement of manufactured housing on individually owned lots, or in all 3 types of locations. Manufactured housing located on individual lots shall comply with lot size, frontage requirements, space limitation and other reasonable controls that conventional single family housing in the same area must meet."

RSA 674:32 (Supp. 1987) (effective until July 1, 1988). (The version of RSA 674:32 now in effect contains no language that would affect our analysis here.) The express legislative purpose of this section is to recognize "the need and right . . . to decent, sanitary housing, and . . . that the partial or total exclusion of manufactured housing would violate those rights." Laws 1986, 91:1. The legislature further recognized the improved quality of manufactured housing, and that exclusion of such housing was based on "outmoded perceptions" as to the safety and quality of manufactured housing. *Id.* The focus of RSA 674:32, according to the statement of legislative purpose, is to provide "reasonable and realistic opportunities" for manufactured housing in municipalities. *Id.*

The plaintiff claims here that the requirements of the Dover Zoning Ordinance are inconsistent with the statute and are therefore illegal. Specifically, the plaintiff argues that § 170-20, C., requiring a finding that the proposed mobile home park will not adversely affect overall land values, begs local boards to speculate

as to the effect manufactured housing would have on land values in the community. The plaintiff also argues that limiting mobile home parks to the R-40 zone, only where municipal water and sewer are located, and only by special exception, violates RSA 674:32 in that it precludes reasonable and realistic opportunities for the placement of manufactured housing.

The defendant argues, on the other hand, that the city's ordinance is consonant with RSA 674:32. Concerning the overall land values element of the special exception requirement, the defendant argues that the element is justified with respect to mobile home parks because of their high density and less stringent setback requirements. Mobile home parks, under the ordinance, must have a minimum lot size of only 10,000 square feet per unit, whereas other residential units (site-built houses or mobile home subdivisions) require 30,000 to 40,000 square feet per lot, depending on the availability of utility services. In addition, the setback regulations are only half as restrictive as those for conventional residential lots. For example, the front yard setback of a conventional lot is fifty (50) feet, whereas it is only twenty (20) feet in a mobile home park. It is not the "outmoded perception" of inferior quality, safety, and aesthetics of mobile homes that gives rise to the land value inquiry, the city argues, but rather the intensity of permitted development. The defendant adds also that manufactured housing is permitted in residential subdivisions without a special exception, thus highlighting the density justification for the special exception requirement for mobile home parks. The defendant argues further that realistic and reasonable opportunities do exist for the placement of manufactured housing. A substantial majority of the residential zones in the municipality are zoned R-40, with mobile homes permitted in subdivisions as of right and mobile home parks by special exception.

We agree with the defendant that the ordinance complies with the language and purpose of RSA 674:32. The general requirements of chapter 126, the mobile home park ordinance, that such developments be located only in R-40 zones, where municipal water and sewer are available, and be allowed only by special exception, do not violate the statute's mandate that municipalities "afford reasonable opportunities for the siting of manufactured housing." RSA 674:32. We note first that these requirements pertain only to mobile home parks, and that, according to the Table of Use Regulations under § 170-12, manufactured housing is permitted in subdivisions that are subject to the same lot restrictions as conventional site-built homes. We must further bear

in mind that municipalities have been granted the sole discretion to impose reasonable restrictions, within the limitations of the enabling statute, upon the development of mobile home parks. *See* RSA 674:32.

■■ Here, a vast majority of the land areas zoned residential in Dover are zoned R-40. This is sufficient compliance with the statutory mandate that areas be provided for the siting of manufactured housing. *See* RSA 674:32; *see also Town of Chesterfield v. Brooks*, 126 N.H. 64, 67, 489 A.2d 600, 602 (1985) (residential zone comprising larger land area and permitting mobile homes complies with previous versions of RSA 674:32). Moreover, the requirement that parks be limited to areas where city sewer and water is located is reasonable, due both to the number of units (a minimum of 10) required for a park and to the density at which a park is permitted to be developed.

■ The special exception requirement is likewise permissible. We agree with the defendant's position that the overall land value inquiry is reasonable, given the permitted density of nearly three times that of other residential development. If this requirement were tied to the "outmoded perception" of inferior quality, safety, and aesthetics of manufactured housing, then it would seemingly be tied to other permitted uses of manufactured housing. Under the ordinance, it is not. The special exception requirement is justified by the high density, and its application is within the discretion of the board, as that discretion is limited by the statute.

### III. *Constitutionality of the Ordinance*

The plaintiff argues that the ordinance, in its requirement that mobile home parks obtain a special exception, deprives it of its constitutional guarantee of equal protection under part I, articles 2 and 12 of the New Hampshire Constitution. It argues that mobile home parks are subjected to additional regulatory restrictions with no justification bearing a fair and substantial relation to the objectives of the regulations. The city argues, on the other hand, that the higher density of a mobile home park is sufficient justification for the disparate treatment under the ordinance.

■■ Citizens of this State enjoy the right to be protected in the use and enjoyment of their property. N.H. CONST. pt. I, arts. 2, 12; *Town of Chesterfield v. Brooks*, 126 N.H. at 68, 489 A.2d at 603. However, zoning ordinances, as a valid exercise of the police power, may interfere with such use and enjoyment in the interest of the public good, and are presumed to be valid. *Id.*; *Stoney-Brook*

*Development Corp. v. Town of Fremont,* 124 N.H. 583, 588, 474 A.2d 561, 563 (1984). Because zoning ordinances are designed to strike a balance between the interests of the public and the rights of individual landowners, we have held that such ordinances, in order to be constitutional, must survive our middle-tier test of constitutional analysis. *Town of Chesterfield v. Brooks, supra* at 69, 489 A.2d at 604. The ordinance "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." *Town of Chesterfield, supra* at 69, 489 A.2d at 604 (citations omitted). The Dover ordinance meets this test.

As previously discussed, the significant difference in density between a mobile home park and a conventional or manufactured housing subdivision justifies the distinction in the regulatory requirements. Under the ordinance, land in an R-40 zone may be developed as a mobile home park to nearly three times the density of a conventional or manufactured housing subdivision. It is likely, then, that the more intense development, including the less stringent setback requirements, will have a substantially greater impact on the value of surrounding properties, traffic conditions, and pedestrian safety.

While the plaintiff is correct in noting that there is no specific statement of purpose in the ordinance for a special exception requirement for mobile home parks, the concern for overall land values of surrounding properties is consistent with the stated general purposes of the enabling legislation and the zoning ordinance. The purpose of requiring a special exception is to promote the health, safety, and general welfare of the community by restricting the higher density development to those areas where the character of the land is suitable and where the value of the property in the area will be preserved. Thus, the special exception requirements bear a "fair and substantial relation" to the object of the regulatory scheme, and the plaintiff's equal protection argument fails.

*Affirmed.*

SOUTER, J., concurred in the result; the others concurred.