Carroll
No. 90-349

MICHAEL ASSELIN, d/b/a MARIO'S RESTAURANT & a.

v.

TOWN OF CONWAY

May 22, 1992

*Charles H. Morang,* of Concord, by brief and orally, for the plaintiffs.

*Upton, Sanders & Smith,* of Concord (*Russell F. Hilliard* on the brief and orally), for the defendant.

THAYER, J. The plaintiffs, Michael Asselin, doing business as Mario's Restaurant, and Lessard Sign Division of Barlo Sign Group, appeal from a judgment in Superior Court (*O'Neil,* J.) upholding the Conway Zoning Board of Adjustment's (ZBA) denial of the plaintiffs' application to use the readerboard portion of their sign. The ZBA's decision to deny the plaintiffs' application was based upon a Conway zoning ordinance which limited the use of readerboard signs to certain businesses. The plaintiffs argue that the ordinance is unconstitutional because: (1) it is an impermissible exercise of the police powers delegated to municipalities by RSA 674:16; (2) it denies the plaintiffs equal protection of the law; (3) it infringes on the plaintiffs' right to freedom of speech; and (4) it interferes with plaintiff Asselin's property rights and constitutes a taking. For the reasons that follow, we reverse on State constitutional equal protection grounds.

Michael Asselin operates Mario's Restaurant on Route 16 in Conway. Mr. Asselin entered into a contract with Lessard Sign Division to erect a sign at Mario's Restaurant. In 1989, Mr. Asselin applied to

the Town of Conway (town) for permission to use the readerboard portion of the sign. A readerboard is a sign with tracks into and out of which letters may be moved in order to change the message. The town denied Mr. Asselin's application, and he appealed the decision to the ZBA, which upheld the denial. The plaintiffs then appealed the ZBA's decision to the superior court challenging the constitutionality of the Conway zoning ordinance, which was the basis of the town's denial of Mr. Asselin's application. The superior court affirmed the ZBA's decision, and this appeal followed.

The ordinance regulates all signs in Conway and provides in pertinent part that "[a] business featuring cinema, theater, the performing arts or nightly live entertainment may be allowed a readerboard type sign with changeable lettering . . . ." CONWAY ZONING ORDINANCE, Section 147-19G(5)(c)(4).

Assuming, without deciding, that the ordinance is a valid exercise of the town's police powers, we focus on the plaintiffs' contention that the ordinance violates their equal protection rights as guaranteed by the United States and New Hampshire Constitutions. U.S. CONST. amend. XIV, § 1; N.H. CONST. pt. I, arts. 2, 12.

■ The United States Supreme Court has held that an individual's federal constitutional right to equal protection is satisfied if the classification established by a municipal zoning ordinance "is rationally related to a legitimate governmental purpose." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 447–48 (1985). However, under the New Hampshire Constitution, a middle tier analysis is employed, and in order for a classification in a zoning ordinance to be constitutional it "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." *Town of Chesterfield v. Brooks*, 126 N.H. 64, 69, 489 A.2d 600, 604 (1985) (citations and quotations omitted). Because the New Hampshire Constitution affords greater protection for individual rights than does the Federal Constitution in this area, we limit our analysis to the State claim. *State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983).

The rationale for using a heightened standard of scrutiny when reviewing equal protection claims regarding zoning ordinances is that ownership, use and enjoyment of property is a fundamental personal right protected by the Federal and State Constitutions. *Brooks*, 126 N.H. at 67, 489 A.2d at 603–04. Generally, government actions infringing on fundamental rights are subject to strict scrutiny analysis and will not be upheld unless they promote a compelling

State interest. *Merrill v. City of Manchester*, 124 N.H. 8, 14–15, 466 A.2d 923, 928 (1983). Although property ownership rights are fundamental, zoning ordinances regulating the use of property do not receive strict scrutiny analysis, because "[z]oning ordinances regulate property for the public good and balance the use and enjoyment of property of some residents against the use and enjoyment of other residents." *Brooks*, 126 N.H. at 68, 489 A.2d at 603.

The pertinent provision of the sign ordinance states that "[a] business featuring cinema, theater, the performing arts or nightly live entertainment may be allowed a readerboard type sign with changeable lettering in place of a wall sign, freestanding sign . . . ." CONWAY ZONING ORDINANCE, Section 147-19G(5)(c)(4). The purpose of the sign ordinance as stated in its preamble and in the defendant's brief is that "signing should not destroy or detract from the scenic vistas, compete unnecessarily with the natural environment . . . proliferate in number with competitive advertising . . . [and should be] nondistracting to vehicular traffic and maintained in safe and good repair." CONWAY ZONING ORDINANCE, Section 147-19A. The defendant agrees with the court below that the object of the legislation is to "generally preclude readerboard signs, except in the case of businesses whose unique advertising needs necessitate their use of readerboard-type signs," in order to preserve the town's aesthetics and to ensure traffic safety.

Assuming that these goals are a valid exercise of Conway's police powers, the question we are faced with is whether the distinction between businesses featuring nightly entertainment and restaurants is reasonable and has a fair and substantial relation to the town's goals of preservation of aesthetics, traffic safety, and the general preclusion of readerboard signs while taking into consideration those businesses with unique advertising needs. *See Brooks*, 126 N.H. at 69, 489 A.2d at 604; *Carson v. Maurer*, 120 N.H. 925, 933, 424 A.2d 825, 832 (1980).

The distinction between businesses featuring nightly entertainment and restaurants clearly is not substantially related to Conway's goals of improvement of aesthetics and traffic safety. Restaurant readerboards do not impair Conway aesthetics any more or less than do readerboards utilized by theaters or businesses featuring live entertainment. Requirements for the design of the signs are consistent, and each readerboard will impair aesthetics equally. Likewise, readerboards advertising meals have the same impact upon traffic safety as do readerboards advertising live entertainment or movies. Motorists are just as likely to read either sign.

The distinction therefore must be fairly and substantially related to the town's goal of generally precluding readerboards while excepting those businesses with unique advertising needs requiring the use of readerboards. We cannot agree with the argument that businesses featuring live entertainment and movies have unique advertising needs not shared by restaurants. While some individuals consider a movie entertainment, others consider a meal entertainment. Each business is engaged in the service of providing entertainment to the public. Just as theaters have the need to inform the public what movie is playing or artist is performing, restaurants have a need to inform the public what meal special is being offered. Thus, the distinction is not fairly and substantially related to the town's goal of precluding readerboards while excepting businesses with special advertising needs because businesses featuring movies and nightly entertainment do not have unique advertising needs not shared by restaurants. Because businesses featuring nightly live entertainment and restaurants are similarly situated, they must be similarly treated. *Campbell Marine Const., Inc. v. Town of Gilford*, 132 N.H. 495, 497, 567 A.2d 184, 185–86 (1989).

Because the distinction between restaurants and businesses featuring live entertainment and movies does not bear a fair and substantial relation to the town's goals, the ordinance must be struck down as a violation of equal protection. As the ordinance fails on equal protection grounds, we need not reach the other issues presented in this case.

*Reversed.*

All concurred.