Carroll
No. 92-298

MICHAEL ASSELIN, d/b/a MARIO'S RESTAURANT, & a.

v.

TOWN OF CONWAY

TOWN OF CONWAY

v.

CARDIFF & COMPANY

July 2, 1993

*Charles H. Morang*, of Concord, by brief and orally, for the plaintiffs, Michael Asselin, d/b/a Mario's Restaurant, *& a.*, and for the defendant, Cardiff & Company.

*Hastings Law Office, P.A.*, of Fryeburg, Maine (*Peter G. Hastings* on the brief and orally), for the Town of Conway.

JOHNSON, J. Michael Asselin, doing business as Mario's restaurant; Barlo Signs, Inc.; and Cardiff & Company (Cardiff) appeal from a judgment in Superior Court (*O'Neil*, J.) upholding the validity of the sign illumination provision of the Conway zoning ordinance, and denying their request for costs and attorney's fees. The trial court affirmed the decision of the zoning board of adjustment (ZBA) of the Town of Conway (the town) denying a permit application for an internally lit sign that Barlo Signs, Inc. leased to Asselin. In another matter consolidated for trial, the superior court issued a temporary injunction enforcing the ordinance's regulation of Cardiff's sign. We affirm because the provision is a reasonable zoning

regulation, consistent with the due process requirements of the State Constitution.

Nestled in the Mount Washington Valley, Conway historically has been a tourist destination for activities in the White Mountain National Forest. Route 16 links the villages of Conway and North Conway and offers striking views of the mountains and ledges to the west. Substantial commercial development, primarily along this highway, has rendered part of the town a shoppers' Mecca. Hundreds of signs draw tourists in the day and evening hours to the shopping centers, lodging facilities, and restaurants clustered in the villages of Conway and North Conway and lining Route 16.

The town passed its first zoning ordinance in 1982, requiring all property owners, with certain exceptions, to obtain a permit from the town zoning officer before erecting a sign. Since 1982, the ordinance has banned signs "illuminated from within," but has allowed the use of signs illuminated by external lights.

Michael Asselin is a town resident who owned Mario's restaurant on Route 16 in North Conway. In December 1988, Asselin acquired a permit to erect an *externally* lit sign. Barlo Signs, Inc. leased to Asselin a sign for Mario's restaurant capable of *internal* illumination. The town notified Asselin that the sign's internal lighting violated the zoning ordinance, and the ZBA denied him permission to use an internally lit sign. Asselin and Barlo Signs, Inc. (hereinafter the Asselin plaintiffs) appealed the ZBA's decision pursuant to RSA 677:4 (1986). The trial court found the sign illumination provision valid and upheld the ZBA's decision.

The trial court's consideration of the Asselin plaintiffs' claims was consolidated with the town's petition for a temporary injunction against Cardiff. Cardiff owns the Indian Head Village Plaza shopping center on Route 16 in North Conway. In February 1990, the town issued Cardiff a permit to erect a sign described in the permit application as externally lit. The two faces of the sign are translucent, and lights in the sign's supporting posts can shine against mirrored surfaces that reflect the light out through the sign faces. Cardiff was convicted in district court in June 1990 of five violations of the sign illumination provision but failed to file a timely appeal. The town petitioned the superior court to enjoin Cardiff from using the lights within the posts to illuminate the sign, and that action was consolidated with the Asselin plaintiffs' action. Following a hearing on the merits, the trial court issued an injunction.

 We first address Cardiff's argument that the sign illumination provision of the town zoning ordinance is impermissibly vague.

The regulation at issue provides: "Signs shall not be illuminated from within; signs may be illuminated only by external light." Due process requires that an ordinance proscribing conduct "not be so vague as to fail to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *State v. Winslow*, 134 N.H. 398, 399, 593 A.2d 238, 240 (1991) (quotation omitted); *see generally* E. ZIEGLER, JR., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 5.03[5], at 5-35 to -37 (1991). Construing the terms of the provision according to their generally accepted usages, *see Winslow*, 134 N.H. at 400, 593 A.2d at 240, we reject the argument that it is impermissibly vague. A person of ordinary intelligence reading the ordinance could understand that it proscribes all methods of sign illumination that cast light from within the sign out through the faces of the sign. Cardiff's sign, designed so that reflective surfaces inside the sign cast light out through the sign faces, plainly falls within the ordinance's proscription. We hold that the sign illumination provision is not unconstitutionally vague.

We next consider whether the State zoning enabling act authorized the town to pass the sign illumination provision solely to promote aesthetic values, including preserving scenic vistas, discouraging development from competing with the natural environment, and promoting the character of a "country community." The State zoning enabling act grants municipalities broad authority to pass zoning ordinances for the health, safety, morals, and general welfare of the community. *See* RSA 674:16, I (1986 & Supp. 1992); *Britton v. Town of Chester*, 134 N.H. 434, 441, 595 A.2d 492, 496 (1991); *Sanderson v. Town of Greenland*, 122 N.H. 1002, 1005, 453 A.2d 1285, 1287 (1982).

> "The concept of the public welfare is broad and inclusive. The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled."

*Berman v. Parker*, 348 U.S. 26, 33 (1954) (citation omitted). Consistent with this expansive view, we have held that towns may consider, at least among other factors, "aesthetic values, such as preserving rural charm," when passing zoning regulations under State law. *Town of Chesterfield v. Brooks*, 126 N.H. 64, 69, 489 A.2d 600, 604 (1985); *see also* RSA 674:17, II (1986). We now conclude that municipalities may validly exercise zoning power *solely* to advance aes-

thetic values, because the preservation or enhancement of the visual environment may promote the general welfare. *See* RSA 674:16, I; *Opinion of the Justices*, 103 N.H. 268, 270, 169 A.2d 762, 764 (1961). We hold that the town in this case has not exceeded its authority under RSA 674:16 by relying exclusively on the promotion of aesthetic values for its exercise of zoning power.

■ The next issue is whether the Conway sign illumination provision is a reasonable exercise of the town's police power. *See* N.H. CONST. pt. I, arts. 2, 12. The trial court found the provision valid after subjecting it to a level of scrutiny analogous to the "rational basis test" employed in certain equal protection cases. *See generally* P. LOUGHLIN, 1 NEW HAMPSHIRE MUNICIPAL PRACTICE, LAND USE PLANNING AND ZONING § 1:10, at 1-20 (1992). We will uphold the trial court's decision if it is not erroneous as a matter of law, and if it is supported by the evidence. *See Britton*, 134 N.H. at 438, 595 A.2d at 494.

■ The trial court applied the proper level of scrutiny. We have applied heightened scrutiny in cases involving *equal protection challenges* to zoning ordinances that create classifications based on the ownership, use, or enjoyment of property. *See, e.g., Asselin v. Town of Conway*, 135 N.H. 576, 577, 607 A.2d 132, 133 (1992). The parties challenging the provision in this case argue that it unreasonably burdens "all" sign users and "many" manufacturers. The appropriate inquiry for reviewing this *substantive due process* claim is whether the claimants proved that the provision constitutes a restriction on property rights that is not rationally related to the town's legitimate goals.

■ Given the presumption that zoning ordinances are valid, *see Brooks*, 126 N.H. at 68, 489 A.2d at 603, we consider whether the evidence supports the trial court's decision upholding the provision. The town passed the provision for legitimate purposes, including preserving scenic vistas, discouraging development from competing with the natural environment, and "promoting community character." The community character sought to be promoted is that of a "country community . . . accustomed to having small hanging signs," or a "business community that operated mostly during the daylight hours, not in the evening." There is support for the trial court's finding that "the natural appeal and general atmosphere of the area could well be negatively affected by the unregulated use of nighttime lighting." It is reasonable to infer that the scenic vistas sought to be preserved by the town include the splendor of mountains at twilight

and the brilliance of stars at night. Ronald Fleming, an expert witness experienced in planning for the preservation and enhancement of visual environments, testified that he had been invited to Conway in the early 1980's by a group of business owners concerned with the deterioration of the area's visual environment. Fleming testified that internally illuminated signs appear as "disconnected squares of light" at dusk and at night, and that the "overall effect" of "an internally-lit sign is to create a visual block that is seen at some great distance sort of bobbing at the windshield," while external lights "soften the impact" of signs in the darkness. The evidence supports a finding that the restriction on internally lighted signs is rationally related to the town's legitimate, aesthetic goals of preserving vistas, discouraging development that competes with the natural environment, and promoting the character of a "country community."

■ Furthermore, the evidence supports the finding that the provision does not place oppressive burdens on the private rights of affected businesses. We note that there is no merit to the position that the ordinance impairs the freedom of expression; the provision is merely a content-neutral restriction on one of the myriad ways in which outdoor messages may be conveyed at night. *See State v. Comley*, 130 N.H. 688, 691–92, 546 A.2d 1066, 1068 (1988); *see also Metromedia, Inc. v. San Diego*, 453 U.S. 490, 516 (1981). The provision allows every business owner to erect a sign that may be effectively illuminated. The evidence reflects that a number of manufacturers are capable of constructing signs fit for external lights, and that signs with external lights may be less expensive. We hold that the trial court did not err in finding the provision valid because it is a reasonable regulation consistent with the due process requirements of our Constitution.

■ Arguing that they have expended time and money challenging Conway's sign ordinance, Cardiff and the Asselin plaintiffs petition for an award of costs and attorney's fees. *See, e.g., Dugas v. Town of Conway*, 125 N.H. 175, 182–83, 480 A.2d 71, 76 (1984). We conclude that such an award would be improper. Cardiff and the Asselin plaintiffs have not prevailed in their due process challenge, nor have they shown that they suffered an especially onerous or substantial deprivation of the value of their property, that is, a taking. *See Funtown v. Town of Conway*, 127 N.H. 312, 318, 499 A.2d 1337, 1341 (1985). An expert for the parties challenging the ordinance testified that the manner of illumination does not affect the value of a sign. The record indicates that Cardiff and the Asselin plaintiffs have used

external lights to illuminate their signs while this matter has been pending. Furthermore, there has been no allegation or suggestion that the town pursued its enforcement and defense of the ordinance in bad faith, or without plausible arguments. Therefore, we hold that the trial court properly denied an award of costs and fees.

We need not address whether the trial court erred in closing the first day of trial before Cardiff and the Asselin plaintiffs began re-cross-examination of a witness because no specific, contemporaneous objection to that decision appears in the record. *See LeFavor v. Ford*, 135 N.H. 311, 313, 604 A.2d 570, 572 (1992). In addition, we do not consider whether the doctrine of estoppel applies to prevent the town from enforcing the ordinance against Cardiff because this issue is not raised in the notice of appeal. *See id.*; SUP. CT. R. 16(3)(b).

*Affirmed.*

All concurred.